## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-00070-SCT

*WILMA LITTLE AND LINDA CARTER, MOTHER*
*AND NEXT FRIEND OF ANIDRA CATRONE*
*CARTER*

*v.*

*V & G WELDING SUPPLY, INC., AND ITS*
*SUCCESSORS AND ASSIGNS; V & G SUPPLY, INC.;*
*MID-SOUTH OXYGEN COMPANY; V & G FIRE*
*EXTINGUISHER SERVICES, INC.; AND LIQUID AIR*
*CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/05/95 |
| TRIAL JUDGE: | HON. EUGENE M. BOGEN |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | MICHAEL T. LEWIS |
| ATTORNEY FOR APPELLEES: | JOHN L. LOW, IV |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 12/31/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/23/98 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. In this case, the appellants challenge the lower court's granting of a summary judgment. Because the appellants had every opportunity in the prior federal suit to litigate the claims they now raise and because the appellees-defendants are in privity with one of the original defendants in the federal court case, we conclude that this cause of action is barred under the doctrine of *res judicata*. We therefore affirm the judgment of the lower court.

**I.**

¶2. In July 1988, Marvin Joe Little and Charles Carter were working as welders for Mainstream, Inc. when an explosion occurred which resulted in the death of both men. There is much speculation as to the precise cause of the explosion; however, the fire department cited two possible causes:

I can find only two (2) possible causes for the explosion: (1) the oxy-acetylene rig was left on during lunch and the area filled with gas and ignited when the torch was re-lit, or (2) the victims may have been using the oxygen line to cool themselves down because of the heat, thus creating an oxygen enriched atmosphere.

¶3. The U.S. Coast Guard also conducted an informal investigation of the accident and discovered that the cutting torch line used to supply propylene gas for welding purposes was leaking shortly before the explosion and that the decedents knew the line was leaking.

¶4. After the welders' tragic deaths, the appellants (Little and Carter) sued in federal court the propylene gas manufacturer (Chevron) and the bulk distributor of the gas (Liquid Air Corporation) under a theory of products liability. Chevron and Liquid Air Corporation filed a motion for summary judgment, which was granted by the district court and later affirmed by the Fifth Circuit Court of Appeals. *See **Little v. Liquid Air Corp.**, 37 F.3d 1069 (5th Cir. 1994)*. The Fifth Circuit found that Little and Carter failed to adduce any evidence upon which a juror could determine that the deaths of the welders were caused by a defect in the product and by a failure to warn by the manufacturer and bulk distributor (the claims advanced by Little and Carter in the federal products liability action). *Id. at 1079*.

¶5. On September 24, 1993, Little and Carter filed a wrongful death action in the Circuit Court of Washington County, Mississippi against the downstream distributors of the gas, Mid-South Oxygen Company (Mid-South) and V & G Fire Extinguisher Service, Inc. (V&G). Mid-South and V & G, in turn, filed third-party complaints against Liquid Air, the bulk distributor, asserting that they were entitled to indemnification from Liquid Air Corp. in case a judgment of liability was rendered against them. The trial court agreed and granted the motion for summary judgment against Liquid Air regarding indemnification. Mid-South and V & G also filed motions for summary judgment against the plaintiffs' claims, arguing that *res judicata* barred the plaintiffs' cause of action and, alternatively, that Liquid Air Corp. had been ordered to indemnify them in the event they were held liable. The trial court granted this motion for summary judgment also.

¶6. Aggrieved, Little and Carter perfected timely appeal of the lower court's granting of summary judgment to this Court.

## II.

¶7. The issue before this Court is whether the federal court case precluded the instant complaint filed by Little and Carter in the circuit court of Washington County under the doctrine of *res judicata*.

¶8. The doctrine of *res judicata* reflects the refusal of the law to tolerate a multiplicity of litigation. *Day v. Volkswagenwerk Aktiengesellschaft*, 464 A.2d 1313, 1316 (Pa. Super. 1983). It is a doctrine of public policy "designed to avoid the 'expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions.'" *Montana v. United States*, 440 U.S. 147, 153-54 (1979). *Res judicata* bars all issues that might have been (or could have been) raised and decided in the initial suit, plus all issues that were actually decided in the first cause of action. *Estate of Anderson v. Deposit Guaranty National Bank*, 674 So. 2d 1254, 1256 (Miss. 1996).

¶9. For the bar of *res judicata* to apply, four identities must be present: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made. ***Dunaway v. W.H. Hopper & Associates, Inc.***, 422 So. 2d 749, 751 (Miss. 1982); ***Estate of Anderson***, 674 So. 2d at 1256. Here, all four of the required identities are present, and the doctrine of *res judicata* is therefore applicable and bars the instant action.

¶10. First, the subject matter of the federal suit and the subject matter of the instant cause of action is the same -- the deaths of the welders. The second identity of the cause of action is likewise the same. In this case and in the federal suit, the cause of action concerns determining which company is liable for the welders' deaths.

¶11. Even though the federal suit was labeled a products liability case premised upon a design defect and the instant suit is deemed a wrongful death action based upon a manufacturing defect, this distinction does not destroy the second identity. In ***Riley v. Moreland***, 537 So. 2d 1348 (Miss. 1989), this Court explained that "[i]dentity of the cause of action exists when there is a commonality in the 'underlying facts and circumstances upon which a claim is asserted and relief sought from the two actions.'" *Id.* at 1354 (*citing **Walton v. Bourgeois***, 512 So. 2d 698, 701 (Miss. 1987)). Whether Little and Carter claim that the cause of action was attributable to a design defect or a manufacturing defect, the crucial fact is that they are seeking to hold an entity liable for the deaths of the welders. They rely on the same facts and circumstances that were alleged in the federal suit, i.e., the release of a dangerous gas caused an explosion which killed two men. In light of their reliance on the same facts and circumstances, the identity of the cause of action is the same, for when there is a commonality of the underlying facts and circumstances the second identity is met. *Riley*, 537 So. 2d at 1354.

¶12. Similarly, this Court has stated that "[w]here one has a choice of more than one theory of recovery for a given wrong, the party may not assert them serially in successive actions but must advance all at once on pain of the bar of *res judicata*." *Walton*, 512 So. 2d at 702. Recently in ***City of Jackson v. Lakeland Lounge***, 688 So. 2d 742, 749 (Miss. 1996), we cautioned that a party cannot relitigate a matter and attempt to elude the bar of *res judicata* by raising a new legal theory. There, the City of Jackson was involved in a zoning ordinance battle with the owners of an adult entertainment lounge (Lakeland Lounge). Lakeland Lounge challenged the constitutionality of the zoning ordinance in federal court. Lakeland Lounge also filed suit in a district court here. The City argued, however, that because Lakeland Lounge had generally challenged the constitutionality of the ordinance in the federal court, it was precluded from raising additional constitutional issues before this Court under the doctrine of *res judicata*, even though the issues were more specific.

¶13. We reasoned that, while the federal court cases dealt with the constitutionality of the City's public policy consideration involving the secondary effects of adult entertainment, the underlying issue was still topless entertainment. *Id.* at 749. As such, this Court concluded that Lakeland Lounge's subsequent suit in the Mississippi district court was barred under the theory of *res judicata* because the party should have raised its specific constitutional challenge to certain language in the ordinance when it generally challenged the constitutionality of the City's conduct and intentions in the federal court. We refused to allow Lakeland Lounge to relitigate the same issue and to attempt to elude the doctrine of *res judicata* by raising a new legal theory. *Id.*

¶14. Such is the case here. By deeming the instant cause of action a wrongful death action premised upon a *manufacturing* defect instead of a *design* defect as alleged in the federal suit, Little and Carter attempt to avoid the doctrine of *res judicata*. We did not allow this in **Lakeland Lounge**, and we cannot allow it here. We find that the second identity of cause of action is satisfied under these facts.

¶15. The third factor that must be present in order for *res judicata* to apply is identity of the parties to the cause of action. To satisfy this identity element, strict identity of parties is not necessary. A nonparty defendant can assert *res judicata* if it is in "privity" with the named defendant. ***Russell v. Sunamerica Securities**, 962 F.2d 1169, 1173 (5th Cir. 1992)* (*citing **Nevada v. United States**, 463 U.S. 110, 129 (1983)*; ***Baylor v. HUD***, 913 F.2d 223, 225 (5th Cir. 1990)). There is no prevailing definition of privity that can automatically be applied to all cases. ***Olivarez v. Broadway Hardware, Inc.***, 564 S.W.2d 195, 199 (Tex.App.--Corpus Christi 1978). "'Privity' is . . . a broad concept, which requires us to look to the surrounding circumstances to determine whether claim preclusion is justified." ***Russell**, 962 F.2d at 1173*. The comment to section 83 of the Restatement of Judgments (1942) instructs that:

> Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties. The statement that a person is bound . . . as a privy is a short method of stating that under the circumstances and for the purpose of the case at hand he is bound by . . . all or some of the rules of *res judicata* by way of merger, bar or collateral estoppel.

Restatement of Judgments § 83 cmt (1942).

¶16. Although the named defendants in the instant matter are different from the named defendants in the federal action, this Court finds that Mid-South and V&G are the privies of Liquid Air, the bulk distributor originally sued in the federal cause of action. Understanding how this Court reaches this determination is not difficult when the facts of this matter are considered.

¶17. Chevron, the manufacturer of the propylene gas, sold the gas to Liquid Air. Liquid Air repackaged the gas and sold it to Mid-South, which in turn sold it to V & G. V & G ultimately sold the gas to Mainstream, the employer of the deceased welders. In the federal court case, it was determined that the gas sold to Mainstream by V & G carried Liquid Air's name and warnings. In addition, the president of V & G, Inc., Roy Purvis, submitted an unrefuted affidavit which stated that the propylene gas was delivered to V & G in a sealed, prepackaged container, that V & G was not provided an opportunity to inspect the propylene gas product, and that the product was not altered, changed, or modified prior to its delivery to Mainstream by V & G.

¶18. Mid-South and V & G fall squarely within the "chain of sale" of the gas and are in privity with Liquid Air due to their relationship as downstream distributors of a product repackaged by and sold under Liquid Air's name. *See **Thompson v. Karastan Rug Mills***, 323 A.2d 341 (Pa. 1974) (recognizing that a manufacturer - supplier of goods stands in "vertical privity" in the "chain of sale" to the retailer and purchaser); *see also **West v. Kawasaki Motors Manuf. Corp.***, 595 So. 2d 92 (Fla. 1992) (noting the weight of authority precludes successive suits in products liability cases against parties in the distribution chain of a product -- the manufacturer, the wholesale distributor, and the retailer -- when based on the same claims and underlying facts).

¶19. Mid-South and V & G's dealings with the propylene gas were attenuated at best. These companies merely passed along Liquid Air's gas in the "chain of sale." Indeed, the trial court's granting of indemnification by Liquid Air if Mid-South and V & G were held accountable for the welders' deaths buttresses our determination that Mid-South and V & G are Liquid Air's privies. Thus, the third identity of parties is satisfied as well.

¶20. The final identity, the quality or character of the person sued, is likewise satisfied under these facts. Mid-South and V & G are distributors - retailers of the propylene gas. Liquid Air is a bulk distributor as well. It is obvious that the quality or character of these companies are, for the most part, the same for purposes of *res judicata*. The four identities that must be present in order for the doctrine of *res judicata* to apply are satisfied. As such, the instant cause of action was properly barred.

## CONCLUSION

¶21. While the result is harsh, it is nevertheless necessary and proper, for the well established doctrine of *res judicata* must, when appropriate, be applied even in a case such as this one. The plaintiffs chose a federal forum and lost. They are precluded by law from trying the matter again in the courts of our state. Based upon the reasons set out above, we affirm the lower court's granting of a summary judgment in favor of Mid-South and V & G.[1]

¶22. **AFFIRMED.**

**PRATHER, P.J., PITTMAN, ROBERTS, SMITH AND MILLS, JJ., CONCUR. DAN LEE, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND McRAE, J. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J.**


   **DAN LEE, CHIEF JUSTICE, DISSENTING:**


¶23. I respectfully dissent. *Res judicata* is not operative here, because the claim in this case is a different cause of action, based on different issues, and against different and potentially independently liable parties.

¶24. *Res judicata* requires that there be an identity between the parties to the suit. ***Dunaway v. W. H. Hopper & Associates, Inc.***, 422 So. 2d 749, 751 (Miss. 1982). In the instant case, although the parties are different, the majority accepts the position of the defendants that there is a privity relationship between Chevron, Liquid Air, Mid-South, and V&G, thus providing the requisite identity of the parties. I disagree.

¶25. The original lawsuit filed by the plaintiff was essentially a products liability action based upon an alleged design defect. The Fifth Circuit specifically noted this, as did the majority in this case. "The plaintiffs' claims, both before the district court and before this court, are framed by their allegations and theories reflected in the amended complaint--the propylene gas manufactured by Chevron and distributed by Liquid Air was defective in only one respect: the failure to warn of nasal fatigue."

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). Necessarily, a determination of whether the gas was defective in this respect would entail an inquiry into any warning that accompanied the product. Such a claim, however, is fundamentally different from the claim made in the instant case: that the product was defective due to the fading or oxidizing of the chemical odorant used to make this colorless, odorless gas readily detectable.

¶26. In the present case, plaintiffs allege not that the product was defective as it was designed, but rather that this particular batch was defective because the protective odorant had faded. As such, the plaintiffs allege independent grounds by which either Mid-South or V&G could be held liable, irrespective of Chevron's or Liquid Air's liability. For a specific example of odorant fade treated as a manufacturing defect, see *Lemond v. Lone Star Gas Co.*, 897 S.W.2d 378 (Tex. Ct. App. 1994); but see *Stibbs v. Mapco, Inc.*, 945 F.Supp. 1226 (S.D. Iowa 1996), which treats an odorant fade claim as design defect strict liability claim.

¶27. The defect, assuming it exists, may or may not have originated with the upstream suppliers Chevron or Liquid Air, or with the downstream distributors Mid-South and V&G. This presumably would be discovered, if at all, at trial. The relevant point, however, is that the upstream suppliers are not parties to this suit, and both Mid-South and V&G could *potentially* be liable whether the product, as designed, was safe or not.

¶28. The distinction between allegations of a design defect versus a manufacturing defect is legally decisive on the question of privity in this case, because, since each defendant has potential independent liability to the plaintiff, they are not privy. The defendants concede as much in their brief to this Court:

> Of course, the situation would be different if Little and Carter had some independent basis for their claims against Mid-South and V&G. Suppose, for example, those two entities breached some express warranty they, but not the manufacturer or distributor (Chevron or Liquid Air), made to Mainstream, the purchaser of the gas. Under such circumstances, Little and Carter would be entitled to pursue Mid-South and V&G . . . . In the case at bar, Mid-South and V&G made neither an express warranty nor an implied warranty of fitness for a particular purpose. . . . It is perfectly apparent that the defects and inadequate warnings which Plaintiffs allege here originated with the upstream supplier, Liquid Air.

Appellees prove too much; in fact, under Mississippi law, neither the warranty for merchantability nor the warranty of fitness for a particular purpose may be disclaimed. Miss. Code Ann. § 11-7-18 (1994); *Gast v. Rogers-Dingus Chevrolet*, 585 So. 2d 725 (Miss. 1991). Furthermore, it is unlikely that either Mid-South or V&G could preclude an action for wrongful death based on a mere disclaimer of implied warranty. In short, the situation *is* different, because the essence of plaintiffs' current claim is a manufacturing defect which at some point rendered the product unsafe, not that Mid-South and V&G are strictly liable as distributors of a defectively designed product. That downstream distributors may be held liable for manufacturing defects is well established in our case law. *Coca-Cola Bottling Co., Inc. of Vicksburg v. Reeves*, 486 So. 2d 374 (Miss. 1986).

¶29. The critical question for purposes of privity is whether the relationship of the parties is such that a determination of the liability of the one is, in practical effect, a determination of the liability of the many. "'Privity' describes a relationship between one who is a party of record and a nonparty that is

sufficiently close so a judgment for or against the party should bind or protect the nonparty." ***Hart v. Yamaha-Parts Distributors, Inc.***, 787 F.2d 1468, 1472 (11th Cir. 1986) (*citing*, ***Southwest Airlines Co. v. Texas International Airlines***, 546 F.2d 84, 95 (5th Cir. 1977). Here, a determination in the suit against Chevron and Liquid Air that the gas was not defective as designed, would not have a preclusive effect on the liability of either Mid-South or V&G under either a negligence or implied warranty theory alleging that the defendants failed to warn of odorant fade.

¶30. There is, therefore, no privity between these parties and, consequently, no identity of the parties. Obviously, having taken an adverse judgment on the products liability claims against Chevron and Liquid Air, the plaintiffs could not come back and sue these same parties on the new theory of manufacturing defect, because that would indeed be a claim they should have raised in the first trial, as the appellees contend. In the instant case, however, the parties are two additional putative tortfeasors, and so in the absence of privity there is no bar under *res judicata*.

¶31. Without passing on the merits of the plaintiffs' claims, it is clear that they are not precluded, as a matter of law, from arguing that Mid-South and V&G are liable under either a negligence or implied warranty theory.

¶32. For the foregoing reasons, I respectfully dissent.

**SULLIVAN, P.J., AND McRAE, J., JOIN THIS OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶33. I write additionally to emphasize my disagreement with the majority's determination that privity exists among the parties and that res judicata applies in this case.

¶34. There are four identities that must be present before a subsequent action may be dismissed on the grounds of res judicata: "(1) identity of the subject matter of the original action when compared with the action now sought to be precluded; (2) identity of underlying facts and circumstances upon which a claim is asserted and relief sought in the two actions; (3) identity of the parties to the two actions, an identity met where a party to the one action was in privity with a party to the other; and (4) identity of the quality or character of a person against whom the claim is made." ***Aetna Cas. and Surety Co. v. Berry***, 669 So. 2d 56, 67 (Miss. 1996) (quoting ***Dunaway v. W.H. Hopper & Assoc., Inc.***, 422 So. 2d 749, 751 (Miss. 1992)). If all four identities are not present, then res judicata cannot serve as a bar to future suits. ***Estate of Anderson v. Deposit Guar. Nat'l Bank***, 674 So. 2d 1254, 1256 (Miss. 1996).

¶35. The reason for the "four identities" rule is clear. With huge conglomerates (like Chevron in this case) there are usually many related corporations using similar titles, even though individual corporations may be responsible for different areas of research, development and production. As a result, with potentially responsible parties closely aligned in function and name, it is difficult for a party bringing a lawsuit to distinguish the proper defendant. If the suing party later finds out that he has sued the wrong defendant, then the truly responsible defendant would be able to avoid trial on the merits based on blurred distinctions between the various corporations. Therefore, the need for establishing "identities" is justified because it facilitates responsibility among closely related

corporations.

¶36. The third identity required to establish a res judicata claim is not satisfied in this case because privity does not exist among the defendant parties. The majority argues that the contractual relationship among Liquid Air, Mid-South and V & G is sufficient to support a finding of privity, since privity should be interpreted broadly. However, "[p]rivity connotes those so connected in law with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Olivarez v. Broadway Hardware, Inc.*, 564 S.W.2d 195, 199 (Tex. Civ. App. 1978). "[P]rivity is not established by the mere fact that persons may happen to be interested in the same question or in proving the same state of facts." *State Farm Fire and Cas. Co. v. Fullerton*, 118 F.3d 374, 384 (5thCir. 1997)(quoting *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971)). V & G was not a party to the previous action in federal court and did not participate in the defense of that action. The only relationship of V & G with prior defendants is that it was the retailer in the chain of distribution of the gas in question. Further, the issues in the federal suit were different from the ones in the instant case. The theories of recovery advanced in this suit are negligence and implied warranty, not product liability. Therefore, privity for V & G cannot exist because its legal interests were not litigated in the former proceeding.

¶37. Unfortunately, the majority's holding will force plaintiffs to sue every party imaginable simply to avoid the possibility of having res judicata apply in the future. In the same vein, it can be argued that the majority's privity rule should allow for judgment against a parent entity to extend down the line to other entities like distributors and retailers, since all parties are in privity with each other. These defendants should also bear the burden of judgment based on the privity found by the majority. In cases like this one, just as in the case of asbestos and breast implant litigation, it can be difficult for plaintiffs to ascertain the exact relationship between parent companies, manufacturers, wholesale distributors and retailers. If we allow privity in this case, will the same rationale also apply when a subsidiary of a corporation executes a contract and is negligent and the injured party sues the parent corporation? Are we now abandoning the concept of piercing the corporate veil?

¶38. I respectfully dissent.

**LEE, C.J., JOINS THIS OPINION.**

1. Mid-South and V & G also assert the defense of collateral estoppel. We decline to reach this issue, however, in light of our disposition of this matter under the doctrine of *res judicata*.