## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 2000-CA-00033-SCT

*MISSISSIPPI DEPARTMENT OF HUMAN SERVICES*

*v.*

*ERIC MALCOLM SHELBY*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 11/29/1999 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOE VANDYKE |
| ATTORNEY FOR APPELLEE: | STEVEN GLEN ROBERTS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED IN PART; REVERSED AND RENDERED IN PART; ON CROSS-APPEAL: AFFIRMED- 12/20/2001 |
| MOTION FOR REHEARING FILED: | 09/06/2001 |
| MANDATE ISSUED: | 1/10/2002 |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is granted. The original opinions are withdrawn, and this opinion is substituted therefor.

¶2. This is a child support case. The parents agreed in the divorce decree that the father would not pay child support in consideration for relinquishing his equity in the marital home to the wife. After the sale of the house, the wife brought a motion to modify based upon the father's changed employment condition. That motion was denied.

/¶3. Thereafter, purporting to act for the mother, the Department of Human Services brought an action to set aside the original decree or for modification asserting that the contract violated public policy. The trial court ordered that the mother be joined as a party and thereafter, rejected the motion for modification and awarded attorneys' fees against DHS pursuant to M.R.C.P. 11 and the Litigation Accountability Act of 1988, Miss. Code Ann. §§ 11-55-1 to -15 (Supp. 2001). DHS appeals this order, again purporting to act on behalf of the custodial parent even though the record does not indicate that DHS provides aid to the mother.

¶4. We conclude that DHS had standing to pursue this litigation, despite the fact that the custodial parent has never received public assistance. Nevertheless, we affirm the appeal as to the merits. With respect to

the imposition of attorneys' fees against DHS, we reverse and render the judgment of the chancery court.

¶5. In February, 1996, Sharen Davis (Davis) filed a complaint for divorce against Eric Shelby (Shelby) based on irreconcilable differences in the Chancery Court of DeSoto County, Mississippi. The court granted the divorce in April of 1996 incorporating into its decree a Property Settlement, Child Custody and Support Agreement signed by both parties and approved by the court. Davis was awarded custody of the minor child, Alysha. Paragraph three of the settlement agreement provided that Shelby did not have to pay child support on the conditions that Shelby relinquish his equity interest in the marital residence and Davis maintain her current job status and income level. This paragraph also noted that in light of Miss. Code Ann. § 43-19-103(h) & (i) (2000), the child support statutory guidelines would be inappropriate and that Shelby's wages should be exempted from withholding pursuant to Miss. Code Ann. § 93-11-103 (Supp. 2001).

¶6. In April, 1997, Davis sold the marital residence for $53,900.00 and received $5,894.19 in cash after deductions of $48,005.81 to repay a loan and other fees. A year later, Davis filed a motion to modify the divorce decree alleging a material change in circumstances and requesting that Shelby be required to pay child support. The request for modification alleged that Shelby had obtained new employment resulting in a significant increase in income and could now provide financial support for their minor child. It did not mention the sale of the residence. After a hearing in July, 1998, the court issued an order denying the motion to modify and finding that Davis failed to present any proof of a substantial and material change in circumstances. Davis did not appeal this order.

¶7. In September, 1998, DHS contends, Davis sought the assistance of the State of Mississippi Department of Human Services (DHS). In August, 1999, DHS, on behalf of Davis, filed a motion, pursuant to M.R.C.P. 60, to set aside the July, 1998, order denying Davis's motion to modify. Shelby answered by filing a Motion to Dismiss, a Motion for Attorney's Fees, and a Response to the Motion to Set Aside the Order.

¶8. As a request for alternative relief, in the event the Rule 60 motion was denied, DHS also filed a Complaint for Support and Other Relief. In response, Shelby filed a Motion to Dismiss and Response to Complaint for Support and Other Relief alleging that DHS failed to join Davis as a necessary party pursuant to M.R.C.P. 19. After an October hearing, DHS filed an amended complaint for support and other relief and joined Davis as a necessary party pursuant to the court's directive order.

¶9. Subsequently, the chancery court denied the Rule 60 motion filed by DHS. DHS then filed a motion for summary judgment on its complaint for support, alleging in relevant part:

> 1. That DHS brought this action to establish child support for the benefit of the minor child, or alternatively to modify the decree of divorce in order to increase child support payments from $0.00 to an amount that would comply with the statutory guidelines ...

> * * *

> 3. That in this case, there is no issue of material fact being contested. The facts as agreed by the parties are as follows:

> ***

c. That numbered paragraph 3 of the property settlement agreement dealt with the issue of child support. That said paragraph stated: "The Husband shall pay unto the Wife the sum of $0.00 per child as child support for the support and maintenance of the parties' minor child. The parties have mutually agreed that as long as the Wife maintains her current job status and current income level, child support payments shall be waived. the (sic) parties further agree that the suspension of child support is based on the Husband relinquishing all of his equity interest in the marital residence unto the Wife. In the event of disability or unemployment, the parties agree that a material change in circumstance has occurred which would allow the Wife to reinstate her right to child support payments. The parties agree that the statutory guidelines would be inappropriate in this case at this time based on MCA 43-19-103(h) and (i). The Husband's wages shall be exempted from immediate withholding as in accordance with Section 93-11-103 of the Mississippi Code Annotated (1972)"...

* * *

p. That there has been no material change in circumstances since the July 1998 hearing.

¶10. The trial court subsequently denied the summary judgment and dismissed the amended complaint finding that there were no material and substantial change of circumstances. Further, the court awarded attorney's fees pursuant to M.R.C.P. 11 and the Litigation Accountability Act. DHS independently appeals to this Court for relief from this judgment.

## II.

¶11. When reviewing decisions of a chancellor, this Court employs a limited standard of review. *Shirley v. Christian Episcopal Methodist Church*, 748 So. 2d 672, 674 (Miss. 1999). The standard of review employed by this Court in domestic relations cases is clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court was manifestly wrong, abused its discretion, or applied an erroneous legal standard. *Sandlin v. Sandlin*, 699 So. 2d 1198, 1203 (Miss. 1997). Thus, on appeal, the chancellor's findings of fact, supported by credible evidence and not manifestly wrong, must be respected. *Newsom v. Newsom*, 557 So. 2d 511, 514 (Miss. 1990).

## III.

¶12. The crux of DHS's first argument is that child support is a right of the child that cannot be terminated by contract and that any provision that attempts to terminate this right is unenforceable and void as against public policy. Further, because child support benefits belong to the child, DHS contends, the custodial parent has a fiduciary duty to hold and use the support for the child's benefit.

¶13. DHS alleges that the instant case is analogous to *Calton v. Calton*, 485 So. 2d 309 (Miss. 1986). In *Calton*, the parties' divorce decree provided that the non-custodial parent, the father, would pay $30.00 per week in child support. *Id.* at 310. The father then conveyed real property to the mother and continued to pay off the debt on the property in lieu of making child support payments. *Id.* In exchange, the mother executed a covenant not to sue for child support; however, the mother later sued the father for child support. *Id.* This Court held that parents cannot by contract alter a child support judgment because the judgment is for the benefit of the child; and therefore, such a contract is against public policy. *Id.*

¶14. Shelby does not respond to DHS's first argument. Instead, Shelby cross-appeals arguing that because DHS failed to join Davis as a necessary party, DHS independently lacks standing to argue this issue on

appeal. DHS has no right to bring this action, Shelby urges, because Davis did not individually appeal the 1996 divorce decree or the 1998 order which found no material change in her circumstances. Further, Shelby asserts that because neither Davis nor DHS appealed the October, 1999, order denying the Rule 60 motion, neither party has a right to the present appeal.

¶15. Shelby also stresses that the chancellor required DHS to join Davis as a party and DHS failed to continue that joinder on appeal. Thus, Shelby maintains, any judgment in this action would impair Davis's ability to protect her interest. Moreover, because Davis does not receive any benefits from the State of Mississippi, Shelby argues, she is not a true "recipient of services" as contemplated under Title IV D of the Social Security Act. Therefore, Davis is not entitled to representation by DHS.

**a.**

¶16. DHS argues that pursuant to Miss. Code Ann. § 43-19-31(b) (2000) it is authorized to bring this action on behalf of Davis. Miss. Code Ann. § 43-19-31(b)(2000) provides in pertinent part that:

> [t]he Department of Human Services is authorized and empowered ...

> (b) To secure and collect support by any method authorized under state law and establish paternity for any child or children receiving *aid* from the department, from a parent or any other person legally liable for such support who has either failed or refused to provide support ...

> ....

(emphasis added). Shelby argues that this statute authorizes DHS to pursue child support obligations only for persons receiving aid from DHS. The record does not indicate that DHS ever provided any monetary aid to Davis.

¶17. In two instances this Court has determined that DHS had standing to bring suits on behalf of recipients. In *Department of Human Servs. v. Gaddis*, 730 So. 2d 1116 (Miss. 1998), this Court held that DHS had legal standing to bring an action to determine the paternity of children born to an existing marriage. *Id.* at 1117. Pursuant to Miss. Code Ann. § 93-9-9(1)(Supp. 2001), which reads "Paternity may be determined upon the petition of ... or any public authority chargeable by law ...," this Court reasoned that DHS was a public authority chargeable by law and could proceed with the litigation. 730 So. 2d at 1117.

¶18. In *Brown v. Mississippi Dep't of Human Servs.*, No.1998-CA-01213-SCT, 2000 WL 216036 (Miss. 2000), a mother, previously assigning her rights to child support to DHS, attempted to seek an accounting and payment of child support collected. *Id.* This Court held, as a matter of first impression, that the mother, even with assigning her rights, was entitled to an accounting and recovery of excess child support collected. This Court reasoned that pursuant to § 43-19-31(b), DHS was authorized and empowered to establish a separate child support unit. Further, in facilitating this unit, § 43-19-35(1) allows:

> By accepting public assistance for and on behalf of a child or children, the recipient shall be deemed to have made an assignment to the state Department of Human Services of any and all rights and interests in any cause of action, past, present or future, that said recipient or the children may have against any parent failing to provide for the support....

¶19. The prior opinions of this Court do not foreclose our determination that DHS had standing to bring the

present action on behalf of Davis. Federal statutory law and regulations, court decisions, and state law explicitly mandate that DHS is authorized to pursue modification of child support orders on behalf of any child or mother where such assistance is applied for, regardless of whether the child or mother is currently receiving, or has ever received, public assistance.

¶20. Miss. Code Ann. § 43-19-31(o) broadly authorizes the DHS child support unit "to provide any child support enforcement or other service as may be required by [the Department of Health and Human Services] pursuant to federal law or regulation." Also, Miss. Code Ann. § 43-19-31(c) authorizes DHS to initiate support proceedings for families that are not a part of the Temporary Assistance for Needy Families (TANF) program.

¶21. Federal statutes, to which the State must adhere under § 43-19-31(o), require the DHS IV-D agency to provide child support enforcement services to *any* child for whom application is made. 42 U.S.C. § 654(4) provides that the state plan for child support must provide that the State will:

> (4)(A) provide services relating to the ... establishment, modification, or enforcement of child support obligations ... under the plan with respect to:

> (i) each child for whom (I) assistance is provided under the State program funded under Part A [TANF] of this subchapter ....

> and also

> (ii) *any other child, if an individual applies for services with respect to the child*.

(emphasis added). Also, 42 U.S.C. § 654(6) requires that the state have an application fee for child support services for those not receiving public assistance. Federal regulations state that child support services under Title IV-D and the state plan "shall be made available to any individual who (i) files an application with services with the IV-D agency" or (iii) to those who have been receiving child support services but are no longer eligible for public assistance. 45 C.F.R. § 302.33.

¶22. The federal courts have been quite clear as to what is required by federal law in this regard. In ***Blessing v. Freestone***, 520 U.S. 329, 334, 117 S.Ct. 1353, 1356, 137 L.Ed. 2d 569 (1997), the Supreme Court observed that under IV-D "a State must provide these [child support enforcement] services free of charge to AFDC recipients and, when requested, for a nominal fee to children and custodial parents who are not receiving AFDC payments." In ***Kansas v. United States***, 214 F.3d 1196, 1197-98 (10th Cir. 2000), the Tenth Circuit, in discussing the IV-D program, observed that states are required to provide assistance in obtaining support for all children for whom such support is requested.

¶23. To summarize, state law explicitly mandates that DHS is authorized to provide any child support enforcement or other service as may be required by the federal Department of Health and Human Services pursuant to federal law or regulation. *See* Miss. Code Ann. § 43-19-31(o). Federal law and regulation beyond question require that DHS make available child support enforcement services for the benefit of all children for whom application is made, not only those receiving public assistance. Therefore, we conclude that a showing of public assistance is not a prerequisite to action by DHS to enforce and collect child support obligations.

**b.**

¶24. The doctrine of res judicata provides "that when a court of competent jurisdiction enters a final judgment on the merits of an action, the parties or their privies are precluded from relitigating claims that were decided or could have been raised in that action." *Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56, 66 (Miss. 1996).

¶25. There are four identities that must be present before a subsequent action may be dismissed on the grounds of res judicata: (1) identity of the subject matter of the original action when compared with the action now sought to be precluded; (2) identity of underlying facts and circumstances upon which a claim is asserted and relief sought in the two actions; (3) identity of the parties to the two actions, and identity met where a party to the one action was in privity with a party to the other; and (4) identity of the quality or character of a person against whom the claim is made. *Dunaway v. W.H. Hopper & Assocs., Inc.*, 422 So. 2d 749, 751 (Miss. 1982). A party is precluded from raising a claim in a subsequent action if the four identities of res judicata are present. This is true regardless of whether all grounds for possible recovery were litigated or asserted in the prior action, as long as those grounds were available to a party and should have been asserted. *Id.* at 751.

¶26. Here these four criteria have been met. First, the subject matter of the original action and the current action is the same--whether a material or substantial change of circumstance has occurred. Second, there are common facts and circumstances upon which a claim is asserted and relief that is sought by Davis. Davis, through DHS, seeks to modify the divorce to decree that was previously agreed upon by Davis and Shelby and approved by the chancellor. Third, the same parties are involved in the current and original litigation -- Shelby, Davis, and, currently, DHS purporting to act on behalf of Davis. Fourth, the necessity for the identity of the quality or character against whom the claim is made needs to be the same in both actions. These criteria are met because Shelby was involved in the trial court action and is the appellee in the current appeal.

¶27. Further, Davis filed her original motion to modify based on Shelby's new employment in April, 1998. She sold the home in April, 1997, and did not allege a change of circumstances based on that sale until August of 1999, when DHS filed a motion on her behalf. Davis and DHS, acting on Davis's behalf are, therefore, precluded from relitigating a claim that could have been presented in her original motion to modify.

**c.**

¶28. What is presented in the instant case is a collateral attack on the decree under Rule 60. The claim is that the judgment is void as against public policy. This Court has stated that a judgment is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.' *Overbey v. Murray*, 569 So. 2d 303, 306 (Miss. 1990) (quoting *Bryant, Inc. v. Walters*, 493 So. 2d 933, 938 (Miss.1986)). Thus, the failure to make more explicit findings regarding a departure from the child support guidelines does not render the decree void, nor does it, without more, provide any other basis for relief under Rule 60.

¶29. While a decree indicating that no child support should be paid is unusual, such decrees are inherently modifiable upon a showing of a material change in circumstances. This fact alone is an answer to DHS's contention that the decree is void ab initio. A myriad of factors informs a chancellor's decision as to what is in the best interest of the child and the dictates of equity in each child support situation.

¶30. The approval of the original agreement was based upon an assessment of conditions as they existed at that time. The terms of child support were then and continue to be modifiable upon a showing of a material change in circumstances warranting such a change in the best interest of the child. Davis has simply failed to make such a showing to the satisfaction of the chancellor. The original decree, viewed as is, is subject to modification and is not void as against public policy for its failure to require the non-custodial parent to pay periodic child support.

## IV.

¶31. We turn now to the issue of sanctions. When reviewing a decision regarding the imposition of sanctions pursuant to the Litigation Accountability Act, this Court is limited to consideration of whether the trial court abused its discretion. *Scruggs v. Saterfiel*, 693 So. 2d 924, 927 (Miss. 1997); *Leaf River Forest Prods., Inc. v. Deakle*, 661 So. 2d 188, 197 (Miss. 1995).

¶32. Rule 11 of the Mississippi Rules of Civil Procedure and the Litigation Accountability Act of 1988, Miss. Code Ann. §§ 11-55-1 to -15 (Supp. 2001), deal with the filing of frivolous lawsuits. Rule 11 and Miss. Code Ann. § 11-55-5 allow for monetary remedy of reasonable fees and costs if a court finds that a party has frivolously filed a motion or pleading without substantial justification. M.R.C.P. 11 states in part:

> If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party, or his attorney, or both, to pay to the opposing party or parties the reasonable expenses incurred ....

Section 11-55-5 provides in relevant part:

> the court shall award ... reasonable attorney's fees and costs against any party or attorney if the court, ... finds than an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification ...

Miss. Code Ann. § 11-55-5 (Supp. 2001). Furthermore, Miss. Code Ann. § 11-55-7 states that "When granting an award of costs or attorney's fees, the court shall specifically set forth the reasons for such award and shall consider the following factors, among others, in determining whether to assess attorney's fees and costs and the amount to be assessed."

¶33. When acting pursuant to Miss. Code Ann. § 11-55-7, therefore, the chancellor is required to set forth the reasons for the awarding of attorneys' fees, using the factors set out by the statute. In the instant case, the chancellor noted only that the motion for attorney's fees was granted. While there may be an implicit finding that this action was frivolous, we would disagree with that finding. DHS sought to establish that a decree requiring no child support of the non-custodial parent was either per se void, or should have been further supported by specific findings. It was wrong as to the first argument and untimely as to the second. Neither argument is necessarily frivolous. "Though a case may be weak or 'light-headed,' that is not sufficient to label it frivolous." *Deakle*, 661 So.2d at 195. Accordingly, we reverse and render the award of sanctions.

## V.

¶34. We conclude that DHS had standing to bring the present action on behalf of Davis. Nevertheless, the doctrine of res judicata precludes DHS, acting on Davis's behalf, from relitigating a claim that could have

been presented in Davis's original motion to modify. Furthermore, Rule 60 does not authorize extraordinary relief under these particular circumstances as the original decree is not void as against public policy. For these reasons, the judgment of the chancery court is affirmed. The judgment awarding attorney's fees against DHS is reversed and rendered.

¶35. **ON DIRECT APPEAL: AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ON CROSS-APPEAL: AFFIRMED.**

**PITTMAN, C.J., WALLER, COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**EASLEY, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶36. I agree that the imposition of sanctions pursuant to the Litigation Accountability Act against DHS should be reversed and rendered as DHS acted in good faith in bringing this litigation. I, however, must respectfully dissent from the majority's determination that DHS has standing to bring this litigation. Davis sought the assistance of DHS to modify her child support payments. At the time in question, Davis did not receive public assistance. Furthermore, the record does not reflect that DHS ever provided financial aid to Davis or that any unrecovered expenditures exist.

¶37. Miss. Code Ann. § 43-19-31(b) (2000) specifically empowers DHS, through its Child Support Unit:

To secure and collect support by any method authorized under state law and established paternity for any child or children *receiving aid from the department*, from a parent or any other person legally liable for such support who has either failed or refused to provide support, deserted, neglected or abandoned the child or children, including cooperating with other states in establishing paternity, locating absent parents and securing compliance with court orders for support of aid to dependent children; the department may petition the court for the inclusion of health insurance as part of any child support order on behalf of any child receiving aid from the department.

(emphasis added).

¶38. I do not believe that the taxpayers should be taxed with the financial burden of providing attorneys and assuming all costs of litigation in return for the payment of a mere $25.00 application fee. DHS's present position is to provide an attorney and all litigation costs for all persons who apply for child support regardless of whether they are a resident of Mississippi, whether they have received public assistance or whether they have the ability to retain private representation. I agree that DHS has a duty to seek child support payments only where the State has or is currently providing public assistance in order to recoup the taxpayer's money expended to support these children. However, to allow otherwise is an undue burden upon the taxpayers of this State.

¶39. While I understand the position of DHS pursuant to the federal statutes, I, however, do not feel that the taxpayers should have to foot this enormous obligation. DHS's attorneys do an excellent job and provide a much needed service to this State despite being over worked and under paid. Until the Mississippi Legislature specifically amends the statute to require that DHS must provide services to collect child support where no public assistance has been provided, I must dissent.