IRVING, P.J.,
for the Court:
¶ 1. Bill Person sued Denbury Onshore LLC (Denbury) to recover certain royalties allegedly due him. The Pike County Chancery Court, finding that Person’s claims were subject to res judicata and were barred by the statute of limitations, entered a final judgment of dismissal in favor of Denbury. Person filed a motion for reconsideration, which the chancery court denied. Feeling aggrieved, Person appeals and argues that the chancery court erred in finding that his claims were barred by res judicata and the statute of limitations.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. In 1958, R.C. Crabb Jr. transferred his mineral interests and right to royalty payments in certain lands located in Pike County, Mississippi, to W.A. Livingston. In 1982, Livingston transferred the mineral interests and right to royalty payments, which he had acquired from Crabb, to Barry Cooper. One month after this conveyance, Cooper sold a portion of his interests to Person, the appellant. Person allegedly acquired the remainder of Cooper’s mineral interests from Cooper’s widow, Bessie Mae Cooper, in 1998. All of Person’s mineral interests in Pike County are “derived from, and described in, the transfer from [Crabb] to [Livingston].”
¶ 4. Included in the mineral interests that Person acquired from the Coopers are oil fields known as Little Creek Field Unit (Little Creek), West Little Creek Field Unit (West Little Creek), and West Lazy Creek Field Unit (West Lazy Creek), all of *812 which are located in Pike County. In 1985, Shell Oil leased Person’s mineral interests in Little Creek and began making royalty payments to him. Shell Oil sold its interests in Little Creek to the J.P. Oil Company in 1996. J.P. Oil continued to tender royalty payments to Person until it sold its interests in Little Creek to Den-bury in 1998. Denbury tendered monthly royalty payments to Person until July 2007, when Denbury suspended Person’s royalty payments because the Crabb-to-Livingston conveyance allegedly failed to contain sufficient “words of grant.” Therefore, according to Denbury, Person did not have a valid interest in Little Creek.
¶ 5. In 2001 and 2002, Person leased his mineral interests in West Little Creek and West Lazy Creek to Denbury, respectively, signing a total of three leases that allowed Denbury to drill on each plot that Person owned in West Little Creek and West Lazy Creek. Person alleges that Denbury fraudulently induced him into signing these leases, as Denbury intended to immediately suspend any royalty payments owed to Person as a result of his mineral interests in West Little Creek and West Lazy Creek. However, Person received royalty payments for his interests in West Little Creek and West Lazy Creek until 2007.
¶ 6. In January 2008, Person filed suit, Cause No. 2008-18 (Person I), against Denbury in the Pike County Chancery Court, alleging that Denbury “wrongfully suspended [his] royalty payments” for his interests in Little Creek, West Little Creek, and West Lazy Creek. Denbury claimed that the Crabb-to-Livingston conveyance was ineffective. Person charged Denbury with bad faith, a violation of trust, and breach of contract; and he sought a declaratory judgment that the Crabb-to-Livingston conveyance was valid. He also sought an accounting of all monies owed to him on his leased mineral interests. Person attached the 2007 suspension letter from Denbury to his complaint.
¶ 7. On March 31, 2008, the chancery court entered an agreed order[1] directing Denbury to
deposit into the registry of the [c]ourt ... the royalty funds in its possession attributable to the interests claimed by [Person].... Denbury shall thereafter, on a monthly basis, deposit into the [r]egistry of the [c]ourt accrued royalty attributable to the interest claimed by [Person],
On August 28, 2008, the chancery court entered an “Agreed Final Judgment With Prejudice,” declaring that the Crabb-to-Livingston conveyance was valid and directing that all royalty payments held in suspense by Denbury or paid into the court’s registry be released to Person. The order also included a clause which stated
that this matter thereafter be fully and finally dismissed with prejudice as to Person and Denbury and the Bank of America, as Trustee of the successors-in-interest to R.C. Crabb, Jr., their successors and assigns, as to all claims and causes of action asserted, or that could have been asserted, in this litigation.
(Emphasis added). On that same day, Person filed a “Notice of Cancellation of Oil, Gas[,] and Mineral Leases,” claiming that his leases with Denbury were can-celled pursuant to the 2007 suspension letter. Person collected the monies that *813 Denbury had deposited into the court’s registry pursuant to the March 2008 order. He also claimed the monies that escheated to the State of Mississippi because Den-bury lacked information to determine the true owners of tracts 106 and 122 located within the Little Creek field. After entry of the agreed final judgment, Denbury resumed tendering royalty payments to Person. However, Person declared that he was entitled to one hundred percent of the production proceeds from the oil fields, refused to cash the royalty checks, and returned them to Denbury. Denbury subsequently tendered the payments to the registry of the chancery court.
¶ 8. Person filed a second lawsuit, Cause No. 2008-582 (Person II), on October 22, 2008, alleging that Denbury had failed to pay “all monies attributable to [Person’s] complete mineral interest ownership, which had been held in suspense and ... should have been paid to [Person] under the terms of the [ajgreed [f]inal Judgment of [dismissal [w]ith [prejudice.” Person also claimed that Denbury had fraudulently induced him into signing the leases covering his interests in West Little Creek and West Lazy Creek. He requested an accounting from Denbury regarding all of the mineral interests that he had leased to Denbury.
¶ 9. On November 9, 2010, the chancery court entered an order requiring Denbury to provide a statement of accounting revealing “the manner in which Denbury calculates Person’s royalty interests” and illustrating monthly royalty payments tendered to Person or to the court’s registry. According to the order, if Person disagreed with Denbury’s accounting, he was to “state with particularity ... why the specific ... royalty entry [was] inaccurate.” After receiving the accounting statement from Denbury, Person summarily claimed that the leases were cancelled in 2007, thus making the entire statement of accounting incorrect.
¶ 10. The chancery court determined that Person’s second complaint was barred by the final judgment in Person I because his second complaint is “based and reifies] on factual matters that occurred prior to the entry of the [judgment in Person I], and are related to the same [ljeases, title defects, lands, [fjields, and royalty pay-mentsfi]”
¶ 11. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 12. It is well settled that appellate courts apply a de novo standard of review to a chancery court’s grant of summary judgment. Harrison v. Chandler-Sampson Ins., Inc., 891 So.2d 224, 228 (¶ 11) (Miss.2005). Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). The party against whom the motion is made “may not rest upon the mere allegations or denials of the pleadings, but instead ... must set forth specific facts showing that there is a genuine issue for trial.” Harrison, 891 So.2d at 228 (¶ 11) (citing Miller v. Meeks, 762 So.2d 302, 304 (¶3) (Miss.2000)). The summary-judgment evidence is viewed in the light most favorable to the nonmoving party. Id.
¶ 13. Denbury attached to its motion for summary judgment thirty-two eviden-tiary documents, which included, among other things, excerpts from Person’s depositions; copies of the correspondence between Denbury and Person; a copy of the *814 check that Person received pursuant to the final judgment in Person I; and a copy of the complaint and amended complaints filed during Person I. In response, Person submitted his responses to certain interrogatories propounded by Denbury, letters from Denbury, and copies of the leases between Denbury and Person.
¶ 14. Person admitted during his deposition that his first amended complaint in Person I included the West Little Creek and West Lazy Creek properties. He also stated that, pursuant to the final judgment in Person I, Denbury sent him a check reflecting the suspended royalty payments that accrued under those leases, as the royalty payments for West Little Creek and West Lazy Creek were not covered by the March 2008 order. He stated that he refused to cash the check because he thought that Denbury owed him more money.[2]

I. Res Judicata

¶ 15. The chancery court determined that Person’s claims in Person II were barred by the doctrine of res judi-cata. Person claims that res judicata is inapplicable in this case because his complaint in Person I only sought a declaratory judgment that the original conveyance of mineral interests was valid and that he was entitled to the suspended royalty payments regarding his mineral interests in Little Creek. He also asserts that the final judgment in Person I did not cover his right to the suspended royalty payments regarding West Little Creek and West Lazy Creek, which is the subject matter of Person II. We disagree, as our review of the record indicates otherwise.
¶ 16. “Res judicata is fundamental to the equitable and efficient operation of the judiciary and reflects the refusal of the law to tolerate a multiplicity of litigation.” Harrison, 891 So.2d at 232 (¶ 23) (quoting Little v. V & G Welding Supply, Inc., 704 So.2d 1336, 1337 (¶ 8) (Miss.1997)) (internal quotation marks omitted). Res judicata has two functions: it precludes the re-litigation of claims that were actually litigated in a previous action, and it prevents the subsequent litigation of any claims that should have been litigated in a previous action. Id. at (¶ 22). The Mississippi Supreme Court has held that “when a court of competent jurisdiction enters a final judgment on the merits of an action, the parties or their privies are precluded from re-litigating claims that were decided or could have been raised in that action.” Id. (quoting Miss. Dep’t of Human Servs. v. Shelby, 802 So.2d 89, 95 (¶ 24) (Miss.2001)) (internal quotation marks omitted).
¶ 17. Our supreme court has further clarified that
[f]or the bar of res judicata to apply in Mississippi^] there are four identities which must be present: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made.... [T]he absence of any one of the elements is fatal to the defense of res judicata.
Id. at (¶ 24) (internal citations omitted).
¶ 18. The four identities are present in this case. The complaints in Person I and Person II cover the same subject matter— Person’s leased mineral interests in Little Creek, West Little Creek, and West Lazy Creek. Also, the parties involved in Per *815 son I and Person II are identical, and the character of the parties has not changed since the agreed final judgment in Person I. Regarding the second identity — the identity of the cause of action — our supreme court has stated that “[i]n order for res judicata and the ban on claim-splitting to take effect, the litigation must involve the same claim premised upon the same body of operative fact as was previously adjudicated.” Id. at 234 (¶ 31).
¶ 19. While Person does not seek a declaratory judgment that he is the rightful owner of the mineral interests that he has leased to Denbury, his claims for royalty payments are based on the same facts that were litigated in Person I. In the agreed final order from Person I, the court not only declared that Person was the rightful owner of the mineral interests that he leased to Denbury, it also directed Den-bury to release the suspended royalty payments for Little Creek, West Little Creek, and West Lazy Creek. During his deposition, Person admitted that the agreed final order addressed the suspended royalty payments for all of his mineral interests— including his interests in West Little Creek and West Lazy Creek. Therefore, Person’s claims in Person II were litigated and resolved by the court in Person I.
¶ 20. Additionally, res judicata bars any issues that Person raised in Person II that he should have and could have raised in Person I. In Person II, Person contended that Denbury had miscalculated the royalties owed to him. However, in Person I, Person and Denbury agreed that Person held a 0.00045787 percent royalty interest in West Lazy Creek, a 0.00757480 percent royalty interest in West Little Creek, and a 0.00054031 percent royalty interest in Little Creek. It is undisputed that Person’s royalty payments were based on these percentages.
¶ 21. Further, even though Person claims, in Person II, that the leases had been cancelled pursuant to the 2007 suspension letter from Denbury — entitling him to larger royalty payments — when Denbury challenged the validity of those same leases in Person I, Person never intimated that the leases were no longer valid in the face of the 2007 suspension letter from Denbury, even though he had attached the letter to his complaint. Person should have addressed this issue prior to the agreed final judgment in Person I and certainly before accepting the royalty payments. The facts relevant to a decision on these issues were known to Person prior to the complaint filed in Person I and were litigated, determined, and foreclosed by the judgment from Person I. Accordingly, the issues that Person raises in Person II are barred by res judicata. This issue is without merit.

II. Statute of Limitations

¶ 22. When Person filed his amended complaint in Person II, he alleged that Denbury had fraudulently induced him into signing the leases covering his mineral interests in West Little Creek and West Lazy Creek. Person signed the leases covering West Little Creek in 2001, and he signed the lease covering West Lazy Creek in 2002. “In Mississippi[,] a claim of fraud has a three-year statute of limitations[.]” Sanderson Farms Inc. v. Ballard, 917 So.2d 783, 789 (¶ 29) (Miss.2005). (quoting Stephens v. Equitable Life Assur. Society of U.S., 850 So.2d 78, 82 (¶ 12) (Miss.2003)). Our supreme court has held that “a fraud claim accrues upon ... the consummation of the fraud.” Id. at (¶ 30) (quoting Dunn v. Dent, 169 Miss. 574, 577, 153 So. 798, 798 (1934)) (internal quotation marks omitted).
¶ 23. The chancery court correctly determined that the three-year limitations *816 period applied to Person’s fraud claims against Denbury and that Person’s causes of action accrued when Person discovered, in 2002 and 2004, that the fields were producing oil. Person had three years from those dates to initiate a claim against Denbury alleging fraudulent inducement. The statute of limitations on Person’s claims expired in 2005 and 2007, respectively.
¶ 24. However, Person alleges that Denbury’s fraudulent concealment tolled the statute of limitations. In Sanderson Farms, our supreme court stated that
[i]n order to establish fraudulent concealment, there must be shown some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim.... [I]n cases with a claim of fraudulent concealment[,] there exists a two-fold obligation to demonstrate that (1) some affirmative act or conduct was done and prevented discovery of a claim, and (2) due diligence was [performed] on [the plaintiffs] part to discover it.
Sanderson Farms, 917 So.2d at 790 (¶ 33) (Miss.2005) (internal citations and quotation marks omitted). Here, Person has failed to allege and/or demonstrate any affirmative act taken by or on behalf of Denbury to conceal its alleged fraud. Also, the facts that Person alleges that Denbury concealed from him were a part of public record, and this Court has stated that “the doctrine of concealed fraud will not toll the statute of limitations where the instrument is recorded as a matter of public record.” McWilliams v. McWilliams, 970 So.2d 200, 203 (¶ 9) (Miss.Ct.App.2007) (citing Carder v. BASF Corp., 919 So.2d 258, 262 (¶ 14) (Miss.Ct.App.2005)). Den-bury’s production records were matters of public record that Person could have reviewed at any time to determine if there was production in the fields and if he was owed additional royalties. Therefore, not only is Person’s claim procedurally barred by the statute of limitations, the claim is without merit as well.
¶ 25. THE JUDGMENT OF THE PIKE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. This order covered only the royalty payments that were due under the Little Creek lease, as, at this time, Person had not amended his complaint to cover West Little Creek and West Lazy Creek.

. Person collected these royalty payments from the chancery court clerk pursuant to an agreed order entered on December 5, 2011, covering royalty payments due under the West Little Creek and West Lazy Creek leases.