IN THE SUPREME COURT OF MISSISSIPPI
NO. 96-CA-00245-SCT

*STACEY RENAE SCRUGGS AND SANDRA FRIEND*
*AS NEXT FRIEND AND GUARDIAN*

*v.*

*WILLIAM SATERFIEL*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/05/96 |
| TRIAL JUDGE: | HON. SARAH P. SPRINGER |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | SUSANNE A. MERCHANT |
| ATTORNEY FOR APPELLEE: | HENRY PALMER |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART - 5/8/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/29/97 |

**BEFORE DAN LEE, C.J., McRAE AND SMITH, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Stacey Scruggs and her guardian, Sandra Friend, appeal the February 5, 1996, order of the Lauderdale County Chancery Court finding that the action they brought to obtain visitation with Stacey's half-brother was "without substantial justification" and accordingly, taxing them with attorney fees pursuant to Miss. Code Ann. § 11-55-5, the Litigation Accountability Act of 1988. Looking for the first time at the issue of sibling visitation, we find that provision for court-ordered visits between minor siblings is a matter for the legislature to determine and therefore affirm the chancellor's denial of the motion. The chancellor, however, erred in finding that the motion was without substantial justification and we therefore reverse the imposition of statutory sanctions.

I.

¶2. Stacey Scruggs and her half-brother, Dustin Anthony "Tony" Saterfiel are the children of Donna Sue Friend Bowman, who died on September 9, 1995. Eleven-year old Tony is also the son of William C. Saterfiel, from whom Bowman was divorced in 1987. The record indicates that the

whereabouts of seventeen-year old Stacey's father are unknown. The children's only maternal grandparent died shortly before their mother's death.

¶3. After his parents divorced, Tony remained in his mother's custody, living with his mother and sister in Meridian. While their mother was in the hospital, both children stayed with their aunt, Bowman's sister, Sandra Friend. Despite Friend's efforts to retain custody of her nephew after Bowman's death, Saterfiel obtained a custody order from the Lauderdale County Chancery Court and took Tony to live with him in Ackerman. Stacey continued to live in Meridian with her aunt.

¶4. Although the record indicates that Saterfiel and his former wife's family are not on the best of terms, Stacey and Tony were allowed a visit on "neutral territory" at Wal-Mart in Louisville sometime in October, 1995. Saterfiel acknowledged that although Stacey was welcome to visit Tony in Ackerman, he would not let the boy visit his family in Meridian. Friend testified that Saterfiel had not been co-operative about allowing the children to visit and stated that since Tony left to live with his father, Stacey has cried a lot, has been depressed and her grades have fallen significantly.

¶5. Alleging that Saterfiel had been uncooperative about visitation between the children and had not followed through on promises he made to let them see each another, Stacey and Sandra Friend, as her guardian and next friend, filed a Motion for Visitation on November 13, 1995. Saterfiel responded with his Counter-Claim for Litigation Accountability on December 27, 1995. He sought dismissal of the motion pursuant to M.R.C.P. 12(b)(6) and requested attorney fees and costs pursuant to the Litigation Accountability Act, Miss. Code Ann. § 11-55-5. On January 2, 1996, the chancellor entered an order dismissing Scruggs' and Friend's motion with prejudice and setting a date for a hearing on the counter-claim.

¶6. A hearing was held on January 29, 1996. In her February 5, 1996, Memorandum Order and Opinion, the chancellor found that "[n]o bad faith existed; the purpose of the suit was to promote the healthy relationship between siblings." However, because the children's mother and maternal grandparent were deceased, the chancellor found that there was no legal basis for the motion as filed. She therefore ruled that the motion for visitation was frivolous pursuant to the Mississippi Litigation Accountability Act, charging Scruggs and Friend with Saterfiel's attorney fees in the amount of $500.00 as well as costs. Noting that the chancery court was without power to compel Saterfiel to send Tony to Meridian for visits, the chancellor nevertheless indicated that, in her opinion, Saterfiel should consider allowing Tony to visit his sister in her home and urged the parties to work together for the child's best interests.

## II.

¶7. Stacey and Friend first assert that although no statutory provision has been made for visitation of siblings separated by divorcing parents, the circuit court erred in not ordering the parties to provide for the children to have regular visits with each other. In support of their argument, they look to case law in Mississippi and other jurisdictions which emphasizes the importance of considering the best interests of the child and preserving sibling relationships. Further, they turn to Miss. Code Ann. § 93-16-1, et seq., which provides for grandparent visitation. Saterfiel merely recites the chancellor's specific findings made pursuant to the Litigation Accountability Act and asserts that because there is no Mississippi law on the subject of sibling visitation, the chancellor properly dismissed the case.

¶8. This Court, as Scruggs and Friend point out, has recognized the value of encouraging sibling relationships. In *Sellers v. Sellers,* 638 So. 2d 481 (Miss. 1994), which involved a custody dispute between an aunt and a natural parent, we clarified our position that "the presumption of awarding custody to a natural parent should prevail over any imperative regarding the separating of siblings." *Id.* at 485. Nevertheless, quoting *Mixon v. Bullard*, 217 So. 2d 28, we reiterated that:

> The Court shall in all cases attempt insofar as possible, to keep the children together in a family unit. *It is well recognized that the love and affection of a brother and sister at the ages of these children is important in the lives of both of them and to deprive them of the association ordinarily would not be in their best interests.*

*Sellers,* 638 So. 2d at 484, quoting *Mixon,* 217 So. 2d at 30-31 (emphasis added). Despite our respect for the preservation of sibling bonds, however, it is not our prerogative to make new laws governing sibling visitation. That decision belongs to the legislature.

¶9. By statute, the legislature has extended third party visitation rights to grandparents when "such visitation rights would be in the best interest of the child." Miss. Code Ann. § 93-16-5. While, ordinarily, the exercise of grandparent visitation rights might serve as a catalyst for preserving the relationship between half-siblings separated by the death of the common parent, in the case sub judice, the only known maternal grandparent died several months before the children's mother's death. We recognize, as Scruggs and Friend argue, that some jurisdictions, in the absence of any statutory imperative, have made provision for sibling visitation when the children's best interests so dictate. *See, e.g. In re Interest of Daniel W.,* 3 Neb. App. 630, 640, 529 N.W. 2d 548, 555 (1995) (as distinguished from grandparent's "right" to visitation which is derived through natural parent's parental rights, "siblings possess the natural, inherent and inalienable right to visit with each other." quoting *L. v. G.,* 203 N.J. Super. 385, 497 A. 2d 215, 222 (1985)); *In re Custody of D.M.M.,* 137 Wis. 2d 375, 387-388, 404 N.W. 2d 530, 535 (1987)(statutes providing visitation to family members are intended to supplement, not supplant, common law rights). We are not so inclined. Rather, we invite the legislature to consider the matter and to expand the rights set forth in § 93-16-5 to siblings or other third parties as it sees fit.

III.

¶10. Stacey and Friend next assert that the chancellor erred in awarding Saterfiel attorney fees and in charging them with costs pursuant to Miss. Code Ann. § 11-55-1 et seq., the Litigation Accountability Act of 1988. Section 11-55-5 (1) provides, in relevant part, that:

> the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.

Following a hearing on Saterfiel's Counterclaim for Litigation Accountability, the chancellor found

that the action had not been brought for purposes of harassment or delay. She found, however, that because there was no Mississippi law providing for sibling visitation, that "there is no substantial justification for the action under the law despite considerations of what is best for these two children." As required by Miss. Code Ann. § 11-55-7, the chancellor specifically set forth all of her reasons for imposing the statutory sanctions.

¶11. Miss. Code Ann. § 11-55-3(a) provides that a claim is without substantial justification when it is "frivolous, groundless in fact or in law, or vexatious, as determined by the court." To determine whether a claim is frivolous pursuant to the statute, this Court looks to the definition of "frivolous" found in M.R.C.P. 11. *Leaf River Forest Products, Inc. v. Deakle,* 661 So. 2d 188, 197 (Miss. 1995). For purposes of Rule 11, a claim is frivolous "only when, objectively speaking, the pleader or movant has no hope of success." *Stevens v. Lake,* 615 So. 2d 1177, 1184 (Miss. 1993), quoting *Tricon Metals & Services, Inc. v. Topp,* 537 So. 2d 1331, 1335 (Miss. 1989); *Smith v. Malouf,* 597 So. 2d 1299, 1303 (Miss. 1992)(applying Rule 11 definition to Litigation Accountability Act context). "Though a case may be weak or 'light-headed,' that is not sufficient to label it frivolous." *Deakle,* 661 So. 2d at 195; *Nichols v. Munn,* 565 So. 2d 1132, 1137 (Miss. 1990).

¶12. Objectively speaking, it cannot be said that Stacey's and Friend's motion was without hope of success. To deem a question of law "frivolous, groundless in fact or in law, or vexatious" merely because there is no existing Mississippi law on the subject would have a chilling effect on all litigation involving questions of first impression.

¶13. When reviewing a decision regarding the imposition of sanctions pursuant to the Litigation Accountability Act, this Court is limited to consideration of whether the trial court abused its discretion. *Deakle,* 661 So. 2d at 197; *Jackson County School Board v. Osborn,* 605 So. 2d 731, 735 (Miss. 1992). Given that the question of sibling visitation is a matter of first impression for this Court, the chancellor abused her discretion in taxing Stacey and Friend with attorney fees and costs. We therefore reverse the chancellor's imposition of statutory sanctions.

*¶14.* **AFFIRMED IN PART AND REVERSED IN PART.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. PRATHER, P.J., CONCURS IN RESULT ONLY.**