# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-01621-SCT

### CONSOLIDATED WITH

## 2006-CA-01625-SCT

*CHOCTAW, INC., ET AL.*

*v.*

*CAMPBELL-CHERRY-HARRISON-DAVIS AND DOVE*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/17/2006 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | NOXUBEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | FRED KRUTZ |
| | EDWIN S. GAULT, JR. |
| | DANIEL J. MULHOLLAND |
| | BRIAN BARRY HANNULA |
| | RONALD G. PERESICH |
| | W. MARK EDWARDS |
| | RANDI PERESICH MUELLER |
| | JOHANNA MALBROUGH McMULLAN |
| ATTORNEYS FOR APPELLEES: | DEWITT T. HICKS, JR. |
| | WILLIAM THOMAS COOPER |
| | STEVE McCONNICO |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/04/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND CARLSON, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY AND FACTS

¶1. On December 30, 2002, Campbell-Cherry-Harrison-Davis-Dove, P.C., (CCHDD), a Texas law firm, filed its original complaints in ***Baldwin, et al. v. Graco Enterprises, Inc., et al.***, Cause No. 2002-429, on behalf of 247 plaintiffs, and ***Prince, et al. v. Pearl River Sand & Gravel Co., Inc., et al.***, Cause No. 2002-430, on behalf of 4,200 plaintiffs, collectively the "CCHDD Plaintiffs," in the Circuit Court of Noxubee County, Mississippi, against 131 unrelated defendants for alleged personal injuries suffered by the CCHDD Plaintiffs' exposure to silica. The lawsuits were filed in the circuit court by the CCHDD Plaintiffs' Mississippi counsel, William H. Liston, Esq., Liston & Lancaster.[1] Amended complaints were filed in the circuit court on March 24, 2003, by Attorney Liston.

¶2. The CCHDD Plaintiffs' cases were subsequently, successfully removed by the Defendants to the United States District Court for the Southern District of Mississippi. Thereafter, the cases were removed by the United States District Court for the Southern District of Mississippi to the United District Court for the Southern District of Texas, which was handling a multi-district litigation (MDL) docket for silicosis claims, the Honorable Janis Graham Jack, District Court Judge, presiding. The Plaintiffs who were removed to the MDL federal court, including the CCHDD Plaintiffs, objected to the removal based on an alleged lack of subject matter jurisdiction. Judge Jack reserved ruling on the lack of subject matter jurisdiction claim, **allowing some initial discovery as to the Plaintiffs' claims and jurisdiction**.

---

[1] Here, CCHDD was defended at trial on the motion for sanctions, as well as in this appeal by the Mississippi law firm Gholson, Hicks & Nichols, P.A.

2

¶3.     After conducting a lengthy evidentiary hearing, Judge Jack **concluded that she lacked jurisdiction** over most of the lawsuits, including all of the CCHDD Plaintiffs, that had been filed in state court and removed to the MDL federal court. *See **In re Silica Products Liability Litigation***, 398 F. Supp. 2d 563 (S.D. Tex. 2005). Before Judge Jack remanded the CCHDD Plaintiffs to the Mississippi state court on June 30, 2005, for lack of subject matter jurisdiction, **she criticized the opinions supporting the silicosis claims,** *despite her admitted lack of subject matter jurisdiction to render any ruling as to the cases except to remand*.

¶4.     Once the CCHDD Plaintiffs were remanded to Mississippi state court, CCHDD, on October 14, 2005, filed a motion for determination of status pursuant to this Court's holding in ***Harold's Auto Parts, Inc. v. Mangialardi***, 889 So. 2d 493 (Miss. 2004). CCHDD sought the Court's guidance regarding the then-recent changes in the law as to venue and joinder after ***Mangialardi***. (The CCHDD Plaintiffs filed suit before ***Mangialardi*** was decided by this Court.) CCHDD requested guidance on how to handle the severance and transfer of the Plaintiffs' claims. **By agreement between the parties, on an *ore tenus* motion to the trial court, most of the Plaintiffs' claims against the Defendants were dismissed without prejudice *and each party agreed to bear its own costs*.**[2] The agreed order was entered by the Circuit Court of Noxubee County on December 14, 2005. The ***agreed order*** specifically stated:

---

[2] The plaintiffs that remained after the initial dismissal also were subsequently dismissed.

IT IS, THEREFORE, ORDERED AND ADJUDGED that all Defendants be and the same are hereby dismissed without prejudice as to the claims of the Plaintiffs listed in the attached Exhibit "A," with ***each party to bear its own costs.***

(Emphasis added).

¶5.    Despite the agreement to bear their own costs, some of the 131 defendants, on December 19, 2005, filed motions for sanctions in the Circuit Court of Noxubee County, alleging that CCHDD frivolously filed the two suits.[3]  The Defendants sought sanctions pursuant to the Litigation Accountability Act of 1988, Mississippi Code Annotation Section 11-55-1, *et seq*.  The substance of the Defendants' allegations was that the CCHDD Plaintiffs lacked any diagnoses to sustain their claims of silica-related disease, and the medical reports submitted by CCHDD were, in effect, a sham.  CCHDD filed its response to the allegations.  A hearing on the motions for sanctions was held on March 26, 2006, by the circuit court, the Honorable Lee J. Howard, presiding.  The circuit court reserved its ruling at the hearing, subsequently entering an order denying the motions for sanctions.  On

---

[3] The Defendants did not seek sanctions against the CCHDD Plaintiffs' local counsel, Liston & Lancaster.  Of the 131 original defendants, the defendants/appellees listed in this appeal of the denial of the motions for sanctions are as follows: Choctaw, Inc.; Clark Sand Co., Inc.; Clark Sales & Rentals, Inc.; Clemco Industries Corporation; Custom Aggregates & Grinding, Inc.; Eastern Safety Equipment Co., Inc.; F & S Abrasives, Inc.; Flexco Products, Inc.; Huey Stockstill, Inc.; Humble Sand Co., Inc. d/b/a Humble Sand & Gravel, Inc.; Ingersoll-Rand Company; Lockheed Martin Corporation; Parmelee Industries, Inc.; P.K. Lindsay Company; Precision Packing, Inc. f/k/a Quikrete Materials, Inc.; Standard Equipment Co., Inc.; and Empire Abrasive Equipment Corporation.

4

July 17, 2006, the circuit court entered its orders denying the Defendants' motions for sanctions "in its entirety."

¶6. The Defendants now appeal to this Court. This Court granted the parties' agreed motion to consolidate the cases for appeal. The dispositive issue that we address on appeal is: whether the trial court erred in denying the Defendants' motions for sanctions against CCHDD under the Litigation Accountability Act of 1988.[4] The Defendants also, alternatively, raise the issue of whether the trial court erred in finding that the record was well-developed and not allowing additional discovery regarding the motions for sanctions.

## DISCUSSION

### I.

¶7. "Miss. Code Ann. § 11-55-3(a) provides that a claim is without substantial justification when it is 'frivolous, groundless in fact or in law, or vexatious, as determined by the court.'"[5] *Scruggs v. Saterfiel*, 693 So. 2d 924, 927 (Miss. 1997). This Court examines whether a claim is frivolous as follows:

---

[4] The Defendants raise numerous assignments of error that all are substantially tied to the discussion of the issue of whether the trial court erred in denying the motions for sanctions.

[5] Mississippi Code Annotated Section 11-55-3(a) (Rev. 2002) provides:

"Without substantial justification," when used with reference to any action, claim, defense or appeal, including without limitation any motion, means that it is frivolous, groundless in fact or in law, or vexatious, **as determined by the court.**

(Emphasis added).

5

> To determine whether a claim is frivolous pursuant to the statute, this Court looks to the definition of "frivolous" found in M.R.C.P. 11. *Leaf River Forest Products, Inc. v. Deakle*, 661 So. 2d 188, 197 (Miss. 1995). For purposes of Rule 11, a claim is frivolous "only when, *objectively* speaking, the pleader or movant has no hope of success." *Stevens v. Lake*, 615 So. 2d 1177, 1184 (Miss. 1993), quoting *Tricon Metals & Services, Inc. v. Topp*, 537 So. 2d 1331, 1335 (Miss. 1989); *Smith v. Malouf*, 597 So. 2d 1299, 1303 (Miss. 1992) (applying Rule 11 definition to Litigation Accountability Act context). "Though a case may be weak or 'light-headed,' that is not sufficient to label it frivolous." *Deakle*, 661 So. 2d at 195; *Nichols v. Munn*, 565 So. 2d 1132, 1137 (Miss. 1990).

*Wilson v. Greyhound Bus Lines*, 830 So. 2d 1151, 1159 (Miss. 2002) (quoting *Scruggs*, 693 So. 2d at 927) (emphasis added). Thus, sanctions are not justified if the plaintiff had some hope of success when the claim was filed. *Bean v. Broussard*, 587 So. 2d 908, 912 (Miss. 1991); *see Wilson*, 830 So. 2d at 1159. "To deem a question of law 'frivolous, groundless in fact or in law, or vexatious' merely because there is **no existing Mississippi law on the subject** would have a chilling effect on all litigation involving questions of first impression." *Scruggs*, 693 So. 2d at 927 (emphasis added).

¶8. "The imposition of sanctions raises a question of law, the standard of review of which is de novo." *In re Estate of Ladner v. Ladner*, 909 So. 2d 1051, 1055 (Miss. 2004) (citing *Amiker v. Drugs For Less, Inc.*, 796 So. 2d 942, 945-46 (Miss. 2001)). However, this Court has also held, "When reviewing a decision regarding the imposition of sanctions pursuant to the Litigation Accountability Act, *this Court is limited to consideration of whether the trial court abused its discretion*." *Scruggs*, 693 So. 2d at 927 (citing *Deakle*, 661 So. 2d at 197;

6

*Jackson County School Board v. Osborn*, 605 So. 2d 731, 735 (Miss. 1992)) (emphasis added).[6]

¶9.    Mississippi Code Annotated Section 11-55-5 (1)-(3) (2007) provides in pertinent part:

Assessment of attorney fees and costs against attorney or party for meritless action, claim or defense, unwarranted delay, or unnecessary proceedings[:]

(1)    Except as otherwise provided in this chapter, in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.

(2)    No attorney's fees or costs shall be assessed if a voluntary dismissal is filed as to any action, claim or defense within a reasonable time after the attorney or party filing the action, claim or defense knows or reasonably should have known that it would not prevail on the action, claim or defense.[7]

---

[6] An extensive number of cases state that the proper standard of review regarding the imposition of sanctions is abuse of discretion. In *Wilson*, 830 So. 2d at 1159, the Court acknowledged abuse of discretion as the appropriate standard of review, stating: "In both *Scruggs* and *Wheeler* we were called upon to determine whether the trial court's award of sanctions pursuant to the Litigation Accountability Act was an abuse of discretion." Also, in *Foster v. Ross*, 804 So. 2d 1018, 1022 (Miss. 2002), the Court provided the appropriate standard of review, holding: "When reviewing a decision regarding the imposition of sanctions pursuant to the Litigation Accountability Act, this Court is limited to a consideration of whether the trial court abused its discretion." (citations omitted).

[7] Subsection (2) of Mississippi Code Annotated Section 11-55-5 is referred to as the "safe harbor" provision by CCHDD.

(3)     When a court determines reasonable attorney's fees or costs should be assessed, it shall assess the payment against the offending attorneys or parties, or both, and in its discretion may allocate the payment among them, as it determines most just, and may assess the full amount or any portion to any offending attorney or party.

¶10.    The Defendants argue that CCHDD's screening process was a device designed to generate unfounded claims.  CCHDD contends that its screening process was well-established and that it is a mechanism that has been used for years in the field of mass torts, citing ***Findley v. Trustees of the Manville Personal Injury Settlement Trust (In re Joint Eastern & Southern Districts Asbestos Litigation)***, 237 F. Supp. 2d 297, 309 (D.N.Y. 2002) ("Claimants today are diagnosed largely through plaintiff-lawyer arranged mass screening programs targeting possibly asbestos-exposed workers and attraction of potential claimants through the mass media.  The programs rely almost solely on chest x-rays and pro-plaintiff readers to identify the injured.").[8]  Today, we are not asked to devise an alternative process to the mass x-ray screening process; we are only asked to decide whether Judge Howard erred in finding that CCHDD's conduct was not sanctionable pursuant to the Litigation Accountability Act.

¶11.    To determine whether an attorney's conduct was sanctionable, we must focus on whether the attorney's conduct was objectionably reasonable.  *See **Wilson***, 830 So. 2d at 1159.  Here, we must start our analysis with the process CCHDD undertook to screen their

---

[8]  The court in ***In re Joint Eastern & Southern Districts Asbestos Litigation*** also went on to examine in detail the complaints associated with the process, stating, "A number of studies have shown that some plaintiffs' doctors consistently over-diagnose asbestos-related conditions."  237 F. Supp. 2d at 309.

8

clients and their reliance on the screening process before filing suit. CCHDD established criteria based on a methodology for diagnosing silicosis to screen potential clients.[9] CCHDD retained a screening company, N&M, Inc., to handle the screening process so CCHDD could be detached from the diagnosis. N&M was informed that CCHDD would only represent persons who met the established criteria CCHDD provided to N&M.

¶12.    Billy H. Davis, Jr., counsel for the CCHDD Plaintiffs, and shareholder in the CCHDD law firm, provided an affidavit detailing the required criteria. In his affidavit, Davis stated that N&M was required to adhere to a screening process that specified that each potential client have: (1) at least two years of silica exposure generally occurring before 1980; (2) a positive B-read by a NIOSH certified B-reader; (3) a physical exam and pulmonary function test; and (4) a diagnosis of silicosis by a qualified physician.[10] N&M was licensed by the State of Mississippi to perform x-rays. N&M informed CCHDD that Ray Harron, M.D., would perform the physical exam and a "B-read" on the individuals screened by N&M. The individuals with a positive B-read would then have a physical exam and pulmonary function

---

[9] Silicosis is a disabling, nonreversible and sometimes fatal lung disease caused by overexposure to respirable crystalline silica. U.S. Dept. of Labor and the National Institute of Occupational Safety and Health, Preventing Silicosis (1996).

[10] NIOSH denotes the National Institute for Occupational Safety and Health, a U.S. federal agency, part of the Centers for Disease Control and Prevention (CDC), which conducts research and makes recommendations for the prevention of work-related disease and injury. *See* http://www.cdc.gov/niosh.html.

A B-reader is a doctor certified by NIOSH to identify the presence of asbestos- and silica- related disease precursors on chest x-rays. *See* **Gibson v. Workers Compensation Appeal Bd.**, 861 A.2d 938, 942 n.4  (Pa. 2004).

test performed. The x-rays and the occupational history information on those positive B-reads would then be provided to a second B-reader for another B-reading. If positive, a qualified physician would determine whether each individual had silicosis within a reasonable degree of medical certainty.[11]

¶13. CCHDD had no contact with the physicians, using N&M as a barrier between itself and the findings and diagnoses. N&M was paid for each positive individual. However, the physicians were paid regardless of whether the diagnosis was positive. Many of the CCHDD Plaintiffs also had been previously diagnosed with asbestosis. The Defendants argue that it is virtually impossible for the asbestosis clients to also be diagnosed with silicosis. However, CCHDD maintains that all the CCHDD Plaintiffs were subjected to a new screening for silicosis, following the screening process stated above. CCHDD also contends that the Defendants do not cite any individual plaintiff who does not have silicosis.

---

[11] Dr. George Martindale issued a diagnosis of silicosis for many of the CCHDD Plaintiffs as the second B-reader. Dr. Martindale later withdrew his diagnoses, claiming that he did not intend to diagnosis silicosis. CCHDD claimed that it was unaware of this. According to a letter from Dr. Martindale to Billy H. Davis, Esq., Campbell Cherry Harris Davis and Dove, dated March 25, 2005, Dr. Martindale informed Attorney Davis regarding the background and scope of his services provided to N&M as a B-reader. Dr. Martindale stated that he was hired by N&M, and he neither had any contact with any attorney from CCHDD nor any Defendant's attorney concerning his diagnoses until he was subpoenaed by a defense attorney in October 2004. According to Dr. Martindale, he never intended on being designated as a "diagnosing physician" or being deposed. Dr. Martindale stated that all his records were turned over to the screening company that hired him, N&M. The Defendants cite Dr. Martindale's recantation as grounds to grant the motions for sanctions against CCHDD.

¶14.    Judge Howard rendered the following findings of fact and conclusion of law in support of his ruling, stating:

> (1)    The Court finds that the claims CCHDD filed in this lawsuit were ***not brought without substantial justification or for delay or harassment***, and thus sanctions are not warranted under the Mississippi Accountability Act. MISS. CODE ANN. § 11-55-5 (2002). The Court finds that the factors to be weighed when considering whether to award sanctions do not support an award of sanctions here. MISS. CODE ANN. § 11-55-7 (a-k) (2002).
>
> (2)    The Court finds further that, at the time this lawsuit was filed, Mississippi had no firm rule regarding the amount of pre-suit discovery required of a plaintiff. The Court finds that ***sanctions are not warranted that would hold CCHDD to a standard that had not been adopted at the time CCHDD filed this action***.
>
> (3)    The Court notes that, by agreement of the parties, CCHDD has dismissed claims brought by many of the plaintiffs pursuant to current Mississippi joinder rules. The Court finds that it is ***not appropriate to award sanctions based on claims after they have been voluntarily dismissed***.
>
> (4)    The Court ***declines to adopt the opinion by the Honorable Judge Janis Graham Jack***, United States District Judge for the Southern District of Texas, Corpus Christi Division, who presided over the *In re Silica Products Liability Litigation, No. 1553.* The federal court remanded this lawsuit back to this Court ***because it lacked subject-matter jurisdiction over this lawsuit***.

(Emphasis added).

¶15.    Despite their agreeing to the dismissal of the CCHDD's claims without prejudice and bearing their own costs associated with the litigation, the Defendants attack Judge Howard's ruling denying the motions for sanctions. First, the Defendants argue that CCHDD delayed the proceedings. However, the dates have been purposely outlined in the procedural history in order to see the actions taken by CCHDD and the date of each relevant filing, including

11

the removal to federal court in Mississippi and Texas, and the subsequent transfer to Mississippi, where the claims were dismissed without prejudice.

¶16.    Based on the background of the case, including its long history of transfers and the period of time allowed by the MDL federal court for discovery, we fail to see how the CCHDD Plaintiffs delayed the litigation for the purpose of harassment.  The fact that CCHDD dismissed its Plaintiffs' claims does not prove that CCHDD acted to delay the proceedings.  The grounds for the dismissal were based on a recent clarification of the law in Mississippi regarding joinder pursuant to Mississippi Rule Civil Procedure 20.

¶17.    In subsections (2) and (3) of Judge Howard's ruling, he states that sanctions were not appropriate because CCHDD dismissed claims, brought pursuant to current Mississippi joinder rules, based on recent opinions by the Court in the area of joinder.  At the time the CCHDD Plaintiffs filed suit, they did not have the benefit of this Court's holding in *Mangialardi*, 889 So. 2d at 495.  In *Mangialardi*, 889 So. 2d at 495, we held, "Such information must include, at a minimum, the name of the defendant or defendants against whom each plaintiff makes a claim, and the time period and location of exposure."  In 2004, this Court took significant steps to clarify the application of joinder pursuant to Mississippi Rule Civil Procedure 20.

¶18.    Here, the CCHDD complaint, filed in 2002, did not satisfy the requirements of our holding in 2004 in *Mangialardi*, which relied on our holding in *Janssen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092 (Miss. 2004).  In *Armond*, this Court addressed joinder, stating:

12

The comment to Rule 20 states both that "the general philosophy of the joinder provisions of these rules is to allow *virtually unlimited joinder at the pleading stage*" and:

Joinder of parties under Rule 20(a) *is not unlimited* . . . . Rule 20(a) imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by or against each plaintiff or defendant relating to or arising out of the same transaction or occurrence; and, (2) some question of law or fact common to all the parties will arise in the action. *Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a)*. . . .

M.R.C.P. 20 cmt. (emphasis added).  The issue, then, is where to draw the line with respect to what is considered "the same transaction, occurrence, or series of transactions or occurrences."  Plaintiffs ask this Court to extend the rule to allow multiple unconnected plaintiffs' actions against multiple unconnected defendants, where independent doctors prescribed at different times and places, the same drug, Propulsid, to different patients.  Defendants ask the Court to place some limit on Mississippi's "virtually unlimited joinder" by finding that the many separate doctor-patient prescribings of Propulsid do not arise from the same transaction, occurrence, or series of transactions or occurrences.

*Armond*, 866 So. 2d at 1097.  Further and importantly, the parties signed an agreed order dismissing most of the plaintiffs, which was approved by the circuit court, with the parties agreeing to bear their own costs of litigation.

¶19.    The Defendants also maintain that Judge Howard was bound under the doctrine of res judicata to adopt the rulings by Judge Jack.  Judge Howard expressly rejected the Defendants' position.  The doctrine of res judicata applies "only to questions actually litigated in a prior suit, and not to questions which might have been litigated." *Mayor & Bd. of Aldermen v. Homebuilders Ass'n of Miss., Inc.*, 932 So. 2d 44, 59 (Miss. 2006) (citing *Dunaway v. W.H. Hopper & Associates*, 422 So. 2d 749, 751 (Miss. 1982) (quoting *Johnson v. Bagby*, 252 Miss. 125, 171 So. 2d 327 (Miss. 1965)).  "Res judicata reflects the

13

refusal of the law to tolerate a multiplicity of litigation." ***Global Oceanic Enters. v. Hynum***, 857 So. 2d 659, 662 (Miss. 2003) (citing ***Little v. V&G Welding Supply, Inc.***, 704 So. 2d 1336, 1337 (Miss. 1997)).

¶20.     In ***Collins v. State***, 594 So. 2d 29, 32 (Miss. 1992), the Court defined subject-matter jurisdiction as:

> [A] court's authority "to entertain and proceed with a case." ***Bullock v. Roadway Express, Inc.***, 548 So. 2d 1306, 1308 (Miss. 1989). In reviewing a subject-matter jurisdiction challenge, this Court looks at the type of case by examining the nature of the controversy and the relief sought, assuming the allegations in the well-pleaded complaint are true. ***Hood v. Dept. of Wildlife Conservation***, 571 So. 2d 263, 266 (Miss. 1990); *see also* ***Penrod Drilling Co. v. Bounds***, 433 So. 2d 916, 924-25 (Miss. 1983) (Robertson, J., concurring).

Here, the CCHDD Plaintiffs raised the lack of subject-matter jurisdiction, and the MDL federal court agreed.

¶21.     Under the facts of this case, Judge Howard correctly found that since Judge Jack admittedly lacked subject-matter jurisdiction, the circuit court was not bound by her rulings as to the CCHDD Plaintiffs on remand. *See* ***Rayner v. Raytheon Co.***, 858 So. 2d 132, 138 (Miss. 2003) (citing ***Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.***, 143 F.3d 1006 (5th Cir. 1998) ("[T]he federal court's 'comments' regarding the merits of Rayner's claims will not subject his new action to the doctrines of res judicata or claim preclusion because those 'comments' concerning the merit of his claims were made without subject matter jurisdiction and cannot be used against his new action.")).

¶22. Examining the record and the arguments advanced on appeal, we find that the circuit court did not abuse its discretion in denying the Defendants' motions for sanctions. Accordingly, this assignment of error is without merit.

**II.**

¶23. Alternatively, the Defendants argue that Judge Howard erred in denying the Defendants' request for additional discovery. The circuit court stated:

> IT IS FURTHER ORDERED that Defendants' requests for additional discovery relative to the Motion for Sanctions is DENIED. The record is sufficiently established for this Court to rule on the merits of the Motion, and no further discovery is necessary.

¶24. The standard of review for evidentiary matters is well-established. In *Payne v. Whitten*, 948 So. 2d 427, 429-30 (Miss. 2007), this Court recently reiterated that, "The standard for review of evidentiary matters is abuse of discretion." (Citing *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (Miss. 1999)).

¶25. As the record demonstrates, the discovery allowed by Judge Jack in the MDL federal court provided sufficient discovery for the circuit court to proceed with the motions for sanctions. Judge Howard conducted a hearing on the Defendants' motions for sanctions. At the conclusion of the hearing, Judge Howard reserved his ruling. After his examination of the record, Judge Howard declined to award sanctions against CCHDD, and he denied the request for additional discovery. Judge Howard was in the best position to determine whether additional discovery was necessary in order to rule on the motions for sanctions.

¶26. Finding no abuse of discretion in the circuit court's ruling, we hold that this assignment of error is without merit.

## CONCLUSION

¶27. For the foregoing reasons, the judgment of the Circuit Court of Noxubee County, Mississippi, is affirmed.

¶28. **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. DIAZ, P.J., AND GRAVES, J., CONCUR IN RESULT ONLY.**