KITCHENS, Justice,
for the Court:
¶ 1. Expro Americas, LLC (“Expro”) filed a complaint in the Chancery Court of the First Judicial District of-Jones County, seeking, inter alia, a temporary restrain *1012 ing order and applying for a preliminary injunction against Eddie, Walters, a former Expro employee, and H & H Welding, LLC (“H .& H”). After conducting an evidentiary bearing, the chancellor dissolved the temporary restraining order and , found no facts to justify the issuance of a, preliminary injunction. The chancellor awarded the defendants attorneys’ fees and expenses in excess of the $5,000 injunction bond that Expro had posted. After determining''that Expro’s suit against H & H was meritless, the chancellor mm sponte dismissed H & H. from the suit with prejudice under Rule 41(b) of the Mississippi Rules of Civil Procedure. We find that the chancellor did not err. by awarding the defendants attorneys’ fees and expenses, because Expro’s application for a preliminary injunction was frivolous and was made in bad faith. However, we And the chancellor misapplied Rule 41 ■ and therefore erred by dismissing H & H from the suit with prejudice.

FACTS AND PROCEDURAL HISTORY

¶ 2. Expro Americas, LLG (“Expro”) is a company based in Houston, Texas, which does business in Laurel, Mississippi. It is a “company that offers oil and gas well and pipeline services.” A major portion of Ex-pro’s pipeline services business involves “helping customers with the safe handling of high pressure hydrocarbons by separating, filtering, and flaring of the gasés that result from, among other things, the cleaning, testing, flushing and' commissioning and decommissioning of pipelines. Expro specializes in state-of-the-art, portable frailer mounted flare systems....” Flare stacks are equipment used in oil fields and pipelines which burn and dispose of excess, unusable waste gas. Expro “provides the specially designed flaring products and services to pipeline transmission companies and refineries along the Gulf Coast.” Flare stacks, in particular Expro’s six-inch, trailer-mounted flare stacks, were at issue in the underlying litigation.
¶ 3. H & H Welding, LLC, (“H & H”) is a welding company located in Ellisville, Mississippi, which was hired by Expro for various flare-stack-related work. Eddie Walters was an Expro employee until August 5,2013. Thereafter, Walters was employed by Clean Combustion, a competitor of Expro’s that was created in 2018 by former Expro employees.
¶ 4. On August 20, 2018; Expro filed a “Verified Complaint for Emergency Temporary Restraining Order And/Or Application for Preliminary Injunction and Permanent Injunction and Other Relief” in the Chancery Court of the. First Judicial District of Jones County against H & H and Walters, alleging that both defendants stole the design for its six-inch, trailer-mounted flare stack. Expro specifically alleged that “[t]he information used to design and create the frailer-mounted flaring system is a ‘trade secret’ of Expro’s within the meaning of Miss.Code Ann. § 75-26-1, at seq,” Furthermore, it alleged breach of contract against H <& H, claiming that the terms of Expro’s purchase orders with H & H contained a “Proprietary Rights” section “in which H & H ‘warrants to keep all design, information, blueprints and engineering data with respect to the Goods confidential and to not make use of but to assign to Expro each invention, improvement and discovery relating thereto (whether or not patentable) conceived or reduced to practice in the performance of the Purchase Order by any person employed by or working under the directions of the Supplier Group.’ ” Expro attached a purchase order to' its Verified Complaint as “Exhibit A.” The purchase order attached to the complaint was not signed by H & H. It also alleged that Walters had signed an “Employee Confidentiality and Conflict of Interest Acknowledgement *1013 [sic],” which it attached to its Verified Complaint.[1] Expro’s specific claims and “Relief Requested” were as follows:
1. ’ Count 1 for Injunctive Relief
¶ 5. .Expro argued that it was entitle?! to injunctive relief because Walters and H & H were copying Expro’s proprietary designs. It argued that “Walters has signed a confidentiality and non-compete agreement to not take Expro’s proprietary information and use it to compete with Expro. H & H similarly has signed a proprietary agreement with Expro not to use Expro’s designs to manufacture components that are not. for Expro’s use.”

%, Comity for. Breach of Contract

¶ 6. Expro argued that both H & E and Walters had breached their respective agreements, alleging that Walters had breached his agreement not to use Expro’s confidential and proprietary information and that H & H had breached its agreement not to manufacture or use Expro’s designs except for Expro’s orders. Specifically to H & H, Expro claimed that H & H “signed an agreement with Expro not to manufacture or use Expro’s designs except for Expro’s orders. See Exhibit ‘A.’ ”

3. Count ¡1 for Misappropriation of Trade Secrets

¶ 7. Expro alleged that Walters and H <⅞ H had misappropriated “the confidential and proprietary information of Expro.”

4. Count b for Violation of the Mississippi Trade Secrets Act

¶ 8. Expro claimed that Walters and Ex-pro had violated the Mississippi Uniform Trade Secrets- Act, Mississippi Code Section 75-26-1.
¶ 9. That same day, Expro filed a motion requesting an emergency temporary restraining order (TRO) and an application for a preliminary injunction. Expro requested that the court enjoin H & H and Walters '“from taking, using, manufacturing, selling or otherwise distributing the confidential and proprietary information of Expro as set forth and described in Ex-pro’s Verified Complaint.” 'The chancellor granted Expro a .TRO. In the order, the chancellor set a security bond of $5,000 pursuant to Mississippi Rule of Civil Procedure 65(e).
¶ 10. The chancellor scheduled .a hearing to address the merits of Expro’s application for a preliminary injunction for August 27, 2018; On August 21, 2013, Expro served a documents subpoena on H & H pursuant to Mississippi Rule of Civil Procedure 45,[2] requesting that H & H produce a large volume of documents prior to the sehéduled hearing. On August 23, 2013, the parties entered into an agreed order continuing the hearing until September 3, 2013. The parties agreed that the TRO should remain in effect until the September 3,2013, hearing.
¶ 11. The preliminary injunction hearing commenced' on September 3, 2013. First, Expro’s employee,. Chris L. Holi- *1014 field, testified.[3] Holifield could not articulate which trade secret was involved in Expro’s production of the six-inch, trailer-mounted flare stack. He stated that “[wje’ve developed specialized tips .and processes to burn products that not everyone else can.” He further testified that the flare stack is “made out of common parts that we put together in a fashion that we' know how to operate and we’ve kept that confidential.” But, although he did not indicate what differentiated the construction or design Expro’s flare stack from the flare stacks of Expro’s competitors, Holifield testified that Expro’s flare stacks were constructed in a way that was unique and proprietary. When the chancellor asked Holifield what was inside the flare stack, Holifield answered “That’s a secret.” He continued to explain: “No. I mean, that’s kinda the point. Maybe there is something in there. Maybe there isn’t.”
¶ 12. Holifield testified that Expro had a patent related to the design of the six-inch, trailer-mounted flare stack. He further testified that the “construction and the processes” for the six-inch, trailer-mounted flare stack being discussed all were within the description of the patent and that the flare stacks at issue and the flare stacks covered by the patent were the “same concept.”[4] The attorney for Expro.argued that Expro was offering the patent “to help demonstrate the confidentiality of the process and that the trade secret — you can have a trade secret that’s not a patent.” He further argued “it can be a trade secret and have a patent on it.”
¶ 13. Moreover, aside from the patent on the flare stack, Holifield testified that Expro did little to nothing to keep its flare stack a secret. When Expro needed to transport its flare stacks, they were placed on the back of an open truck, uncovered, and driven to a job site. If the flare stack was being transported far away and the employee transporting it had to stop and spend the night at a hotel, the employee usually parked the flare stack, uncovered, in the parking lot of the hotel. Furthermore, Holifield testified that when Expro sent the flare stack to other companies, Expro did not tell its employees or the employees of other companies to cover the flare stacks, not to allow people to photograph them, or to keep them secure; indeed, Expro does not inform companies in writing that the design of the flare stack is confidential. Holifield also testified that the four-inch flare stack is substantially similar to the six-inch flare stack. He added that Expro has not required any of its vendors, including H & H, to sign confidentiality agreements.
¶14. The hearing continued on September 5, 2013. Also on September 5, 2013, Walters filed a “Motion to Dismiss and Dissolve the Temporary Restraining Order and Deny the Request for [a] Preliminary Injunction” and a “Motion for Attorney’s Fees and Expenses,” both of which H & H joined. Walters also filed a motion to transfer the case to circuit court, arguing that, except for the injunction, all of the remaining causes of action were remedies at law and not remedies in equity.
*1015 ¶ 15. Chris M. Holifield, the owner of H & H, testified that all of the flare stacks he built for various customers were substantially the same. He • also testified that anyone could go on the website óf a company named “Tornado” and could design any type of flare stack. He noted that .one of the flare stacks .on the website is essentially the same as the Expro six-inch flare stack. He also testified that all of. the different-sized flare stacks, were substantially the same, other than their sizes.
¶ 16. Holifield then testified that he had never signed a confidentiality agreement with Expro. .He testified that the first time he had seen the document that Expro had attached to its complaint, representing that H & H had signed .such a document, was when he was served with the complaint. At a break in testimony, the attorneys for Expro admitted that H & H had not signed a contract similar to,the one that Expro had attached to its verified complaint with the representation that H & H was bound by the document. The following discussion occurred:
MR. McLEOD: Judge, for the record my name is Marty McLeod. We met earlier and I represent Expro. After the testimony that we’ve just heard from Mr. Holifield on the issue of the purchase order ánd sales order of Éxpro, I wanted to address something. We spoke with opposing counsel, and I want to address something with the Court. In light of that testimony and looking at the complaint that was filed and verified by Ronnie Williams of Expro, who is still here, attached to the complaint' for which we sought the injunction and temporary restraining order, was an Expro purchase order. And that was a purchase order that was attached to the complaint as an example of what Expro sends out to all of its vendors, nationally and worldwide, whenever work is done. At the time that it was executed by Mr. Williams, you know, he believed it was sent to H & H Welding for that work. And that in the past when' that work was sent to H & H Welding it was done also with those purchase orders.
In this particular case based upon Mr. Holifield’s testimony, his testimony is that he did not receive a purchase order and that he’s never received, I believe, a purchase order for Expro. In our conference that we had with Mr. Gholson, counsel for H & H, he represented that he does have all of the files for all of the work that H & H has ever done for Expro. We’ve only done very minimal discovery in this case, so we haven’t seen the Expro filé that H & H has. I’ll let Mr. Gholson comment on what is actually in those files. • ■
Rut the last thing we that we [sic] ever want to do to opposing counsel, to either party defendant in this case or to the Court is misrepresent what the facts are. And so, you know, we thought we should bring that to the Court’s attention immediately rather than wait.
I wanted to be crystal clear about that and be happy to answer any, questions about that, Mr. Williams is here who signed the verification. If you’ve got an [sic] questions for him, I’m sure he would be happy to answer that.
And so, you know, on that basis, I just wanted to bring that issue to the Court’s attention. And, you know, I wanted to make it clear that purchase order that was attached to our complaint was specifically attached, as my understanding, as an example. Not as the one that was used in this case.
But if that is incorrect, then it is incorrect. And we don’t want to use it as a basis to rely on for a permanent injunction if that’s the case.
*1016 'MR. TRAPP: Your Honor, I think it would also be added to that we- have been unable to get a verification that those .purchase orders were sent and without having looked at from 2007 forward, I think, Mr. Gholson has — not only is it for example, the search of our files so far as to not create a situation in which we could show that one had been sent.
THE COURT: In other words you don’t know or you don’t — you can’t show that a purchase order in the form attached as Exhibit A to your complaint was ever sent to H & H Welding?
MR. TRAPP: That’s correct, Your Hon- or.
THE .COURT: Okay.
MR. TRAPP: And I apologize to the Court and everyone else.
THE COURT: All right. Well, therefore, the Court will be compelled to disregard the Exhibit A attached to the complaint and the Exhibit No. 38.
And furthermore in looking at this particularly Exhibit 38 and 39, it seems that even if the purchase order was sent to H & H in the 'form attached as Exhibit A to the complaint, Exhibit 38 in this hearing that — it’s kinda like trying to dose the gait [sic] after the cow got out because Expro had gone to H & H and said, I need this. H & H said, here it is, take it with you. We’ll send you tv bill, And under those conditions, it couldn’t be made subject to any of these conditions attached to Exhibit A and Exhibit 38.. ■
All right. Does that clarify the record? MR. GHOLSON: It does, Your Hon- or, .'
Shortly after Expro’s admission about the purchase order, H & H moved ore teivm for “the temporary retaining [sic] order be dissolved, and move[d] to dismiss [the] complaint for an injunction, because of those misrepresentations that have been made.” Walters joined this motion. The chancellor-then confirmed with counsel for Expro that it had concluded its proof regarding H & H. The chancellor held:
[B]ased on all of the testimony and all of the trial exhibits and case authority that have been cited by all the parties, the research that the Court hás done on its own, a dató based upon a trade secret must be’based on something that is in actuality a secret. ■
If it is something that -is known in the industry or known to the general public, it’s no longer a trade secret. The cat got out of the bag. The only way that the Court could determine that H &’H was in violation of the statute on trade secrets, would be to make a finding that H & H acquired the trade secret by improper méans. That is, through some improper method.
And the evidence indicates that on more than one occasion, Expro has taken the products claimed to be trade secrets to H & H for them to work on. They’ve have [sic] unrestricted access to look at them. They’ve had unrestricted access, if they wanted to, to make measurements. They obviously made photographs as a part of their business routine.
And they did .not take any steps to insure that H & H. would , keep any information that they gained while working on the equipment confidential. Had they done that, we would have a different story here. But they didn’t.
So it’s dear to me that as far as H & H is concerned, this equipment does not constitute a trade secret, and that H & H would in no way be liable under the trade secret statute that the claim against them is based'on. I just can’t make that finding.
*1017 I find affirmatively that'H & H should be — the preliminary injunction — excuse me — the temporary restraining order issued against H & H should be dissolved. And that there’s insufficient grounds for the Court to issue a preliminary injunction. So H & H is dismissed from the case subject to a claim for attorney fees which we will take up at a later .time. Now, as to Mr. Walters, the claim against him appears to be based upon Exhibit 2 of the hearing — record hearing, the employee confidentiality and conflict of interest acknowledgment. It also appears to be based upon the common law theory that an employee owes an employer a duty of good faith and loyalty. And the claim is based upon the violation of the confidentiality agreement and the common law claim.
Typically, what you get there is you get injunctive rélief only when the violation occurred at a time when the person is employed by — would be employéd, by Expro. But this agreement does not address any noncompetition upon termination of employment.
So the Court couldn’t in join [sic] Mr, Walters from going to work for Expro— I mean for COI or anybody else in the world he wanted to go to work for. And it appears that the remedy that Expro would have against Mr. Walters for violation of the confidentiality agreement and common law claims, would be money damages. Which is a matter that would entitle him to a trial by jury.
So as to Mr. Walters, I’m not going to— I’m going' to terminate the retraining [sic] order, but I’m going the [sic] retain jurisdiction of the other claims asserted against him. But because they áre legal in nature, it is my intent to transfer them to whatever Circuit or County Court venue that the Plaintiff want’s [sic] them sent to.
¶ 17. On September 16, 2013, the chancellor issued an order dissolving the TRO and denying Expro’s application for a preliminary injunction. The chancellor found that Expro “took no steps to ensure the confidentiality of any of the information H & H may . have gained while working on Plaintiffs equipment” and that Expro gave “H <& H, unrestricted access to the equipment Plaintiff is claiming to be a trade secret.” It thus dismissed H & H from the case with prejudice based on the merits of Expro’s claims against the company. The court also dissolved the TRO against Walters, finding that the remaining claims against him were for money damages because Walters did not sign a noncompete agreement while he was employed by Ex-pro-. The chancellor then transferred Ex-pro’s remaining claims against Walters to the' Circuit Court of the First Judicial District of Jones County. The chancellor retained limited jurisdiction over the case to determine appropriate attorneys’ fees and expenses.
. ¶ 18. Éxpro filed a motion to reconsider. Expro objected to H & H’s being dismissed with prejudice. It argued that the motions to dismiss by Walters and H & H were only to dismiss and dissolve the TRO and deny the preliminary injunction, not to dismiss all claims against the defendants. Expro argued that the hearings were not a final adjudication and also argued that it should .be .allowed leave to amend its complaint. Both Walters and H & H filed supplemental motions for attorneys’ fees. Expro responded, arguing that Walters and H & H were not entitled to attorneys’ fees. It alternatively argued that any attorneys’ fee award should be limited to the amount of the $5,000 security bond it posted when it applied for the injunction. It also asserted that “there has been no showing of bad faith in the *1018 issuance of the restraining order by the Court.”
¶ 19. A hearing on the motion for attorneys’ fees and expenses commenced on October 22, 2013. The chancellor held:
THE COURT: Hold on. When the verified complaint was filed on August 20th, 2013, it had attached to it as an Exhibit A what purported to b'e a purchase order entered into between H & H Welding, LLC and Expro Americas, LLC. And as part of that exhibit — it’s a very lengthy, several pages of terms and conditions of the purchase order that Expro relied upon to support its request for a restraining order.
Paragraph 16 talked about proprietary rights. Paragraph 17 talked about patents." Paragraph 20 talked about confidentiality. And it — the complaint was verified by Ronald Williams, and it stated that everything in the complaint including each of the exhibits attached were true and accurate based on personal knowledge unless otherwise stated. We tried this case in two days, and the peg that Expro was using to get the restraining order to begin with against H & H was this Exhibit A. And lo and behold, during the course of the hearing, we find out that Exhibit A never existed. There was no such document in existence as what was represented to the Court when the Court was' asked to issue a restraining order.
It was acknowledged at that time that Expro could not produce to the Court that document nor any other document incorporating those terms in a purchase order between H & H and Expro.
Now, I don’t know what you call that. I don’t know if you call it bad faith or what you call it. But, certainly, that’s a factor that the Court, I think, has to consider on all of these issues that are now before the Court.
Arid I think that was discussed when we had the hearing — -when we concluded the last hearing in this case. That was a significant thing that occurred and,' of course, the acknowledgement [sic] at that time that Expro — this document did not exist. They could not produce a document showing that it existed, which served as a basis for' the Court’s ruling as to H & H — or part of it.
Had there been a confidentiality agreement that H & H had entered into with Expro with Expro trying to protect the trade secret and H & H having agreed to protect it, that would have been a different story.
So that’s something I’ve got to take into consideration that it was represented that this is true and correct exhibit— this is something that we can produce in court and they’re going to have to acknowledge it being in existence. And turns out that the whole premise upon which the Court was asked to make a decision on a restraining order was false.
So that is what it is.
MR. GHOLSON: With that being said, Your Honor, we’re prepared to put on ■all the proof on the bad faith issue....
THE COURT: Well, I don’t know what kind of notice — advance notice you gave them that you’re going to raise that issue, but it’s here. It’s already before the Court.
MR. GHOLSON: Let me address that if I may. If you look at Page 4 and 5 of their response to our suppleméntal motion for attorneys’ fees, they raised it themself in two places.
[[Image here]]
So I don’t think it’s incumbent upon us to put them on notice that we were going to offer that proof. They raised *1019 the issue on their pleadings, and we’re prepared to meet that.
THE COURT: Well, I understand you want to — the Court has just detailed to you what I’ve already made findings on,
MR. GHOLSON: Yes, sir.
THE COURT: And I, as I say, I don’t know what you call it — you can call it bad faith, you can call it being untruthful. They may want to call it an oops. We messed up. But somebody, when Expro signed a document that served as a basis for this Court taking action, that has created all of what we’re dealing with here today — and they signed it. They either knew it wasn’t true or they didn’t — they didn’t attempt to verify whether it was true or not. That’s the way I view it.
¶ 20. Expro continued to argue that it had a viable basis for an injunction. The chancellor found that:
[T]he underlying basis for your claim against' H & H was that they had appropriated a trade secret and that they had violated some sort of contractual agreement with Expro to maintain the secrecy of the trade secrets. And the reason it failed was because the Court determined that your client’s product was not a trade secret. And that your client had taken no steps to maintain it as a trade secret.
It allowed it to be placed in H & H’s shop without any restrictions on what they could do with it. And I just felt like the law was clear, that if you don’t take some action to protect your trade secret and once it’s in the public domain, it’s fair game. Anybody and everybody in the world can duplicate it.
Expro also argued that, because H & H and Walters had agreed to extend the TRO by agreeing to continue the hearing for three business days, the defendants had waived any claim to attorneys’ fees beyond the amount posted in the injunction - bond. Further, Expro argued that the chancellor had erred by dismissing H & H with prejudice and instead should have dismissed H & H without prejudice or not dismissed H & H as a defendant and transferred the case to circuit court. The court noted that it had dismissed all the claims against H & H that were in the complaint because they without merit; thus a transfer to circuit court would be inappropriate.
¶ 21. On March 5, 2014, the chancellor granted both. H & H’s and Walters’s motions for attorneys’ fees. The chancellor awarded Walters $31,565.47, and H & H $48,337.89 in attorneys’ fees and expenses. On the same day, the chancellor denied Expro’s. motion for reconsideration. . Ex-pro timely filed its notice of appeal.
¶ 22. On appeal, Expro asserts two issues: (1) Whether the trial court erred in awarding the defendants attorneys’ fees and expenses in an amount exceeding the injunction security bond and (2) whether the trial court erred by dismissing H & H with prejudice.
ANALYSIS
I. Whether the trial court erred in awarding the defendants attorneys’ fees and expenses in an amount exceeding the injunction security bond.
¶ 23. Expro argues .that the trial court erred in awarding attorneys’ fees and expenses in excess of the injunction security bond, violating well-established Mississippi law. Notably, Expro does not argue that the chancellor erred in calculating the amount of attorneys’ fees and expenses.
*1020 ¶ 24. The question of whether a chancellor may award attorneys’ fees and expenses, in excess of the injunction security- bond posted by the party seeking an injunction is a question of law which this Court reviews de novo. Hooker v. Greer, 81 So.3d 1103, 1108 (Miss.2012). This Court, however, reviews a chancellor’s findings of facts and award of attorneys’ fees for an abuse of discretion. Choctaw, Inc. v. Campbell-Cherry-Harrison-Davis & Dove, 965 So.2d 1041, 1045 n. 6 (Miss.2007).
¶25. The injunction bond rule, which this Court adopted in Broome v. Hattiesburg Building & Trades Council, 206 So.2d 184 (Miss.1967), provides that, in the event an injunction is wrongfully issued, the damages for a wrongfully issued injunction are limited to the amount of the injunction bond. In Broome," a business owner received an injunction restraining certain employees and local unions and the Trades Council from picketing. Id. at 185. This Court affirmed the injunction, but the United States Supreme Court reversed. Id. After the injunction was dissolved, the trial court awarded the defendants $6,572.72 in attorneys’ fees and costs and expenses. Id. at 186. The injunction bond was $1,500. Id. at 187. The terms of the injunction bond were that it was “conditioned to pay 'all damages and costs which may be awarded against the complainant.’.” Id. This Court held that.“it has become well settled in this state that in suits upon injunction bonds no recovery may be had against principal or sureties in excess of the penalty of the bond.” Id. at 188 (quoting Anderson v. Falconer, 34 Miss. 257, 260 (1857)). This Court held that if the bond is insufficient security for the damages sustained by the enjoined party, that party must request of the court a sufficient bond. Id. at 189. In Broome, the defendants .argued that the applicable code section, which was nearly identical to the current Section 11-13-37 of the Mississippi Code,[5] did not limit them to the amount of the bond and that the Legislature’s intent was to afford additional security, not to limit recovery. Broome, 206 So.2d at 188. The Coui’t declined to adopt this interpretation, finding that the Legislature simply intended to provide a more convenient method of proceeding against the bond. Id.
¶ 26. In the case sub judice, the chancellor set a security bond of $5,000, which Expro posted. After conducting a hearing, the chancellor awarded Walters $31,565.47 and H & H $48,337.89 in attorneys’ fees and expenses. Obviously, the attorneys’ fees and expenses awarded in this case greatly exceeded the amount of the posted security bond. However, what effect, if any, the promulgation of the Mississippi Rules of Civil Procedure[6] has on *1021 this Court’s holding in Broome is not ripe for this Court’s consideration because the chancellor made sufficient factual findings that attorneys’ fees were appropriate because Expro’s application for a preliminary injunction was made frivolously and in bad faith.
1127. Rule 11 of the Mississippi Rules of Civil Procedure provides:
If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party, or his attorney, or both, to pay to the opposing party or parties the reasonable expenses incurred by, such other parties and by their attorneys, including reasonable attorneys’ fees.
M.R.C.P. 11(b). Similarly, the Mississippi Litigation Accountability Act (LAA) provides:
In any civil action commenced or appealed in any court of record in this state, the court shall award ... reasonable attorney’s .fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action ... that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment. ... ¡
Miss.Code Ann. § 11-55-5(1) (Rev.2012); see Hooker v. Greer, 81 So.3d 1103 (Miss.2012) (“The provisions of the [Litigation Accountability Act] are in harmony with those of Mississippi Rule of Givil Procedure Tl, which allows the awarding of attorney’s fees as a sanction. The LAA merely augments Rule 11 by ‘stating that the court shall specifically set forth the reasons for awarding attorney fees and costs and enumerates factors'which shall be considered by the court.’”) (internal citations omitted). The Act defines a claim brought “without substantial justification” to be one that is “frivolous, groundless in fact or in law, or vexatious, as determined by the' court.”' Miss.Code Ann. § 11-55-3(a) (Rev.2012). This Court applies the same test to determine whether a filing is frivolous under both Rule 11 and the Act. In re Spencer, 985 So.2d 330, 338 (Miss.2008). A claim is frivolous when, “objectively speaking, the pleader or movant has no hope of success.” Leaf River Forest Prods., Inc. v. Deakle, 661 So.2d 188, 195 (Miss.1995) (internal citation omitted).[7]
¶28. In tins case, even though the chancellor did not rely upon these facts.or Rule 11 in his order awarding attorneys’ fees, the chancellor made many explicit findings that Expro’s application for a pre-liminaryiinjunction was made frivolously and in bad faith. See Love v. Barnett, 611 So.2d 205, 207 (Miss.1992) (“[W]here the chancellor-reaches a correct result in accordance' with the law and facts,-this Court will affirm the result even though a wrong reason be assigned.”); accord Hogan v. Buckingham ex rel. Buckingham, 730 So.2d 15, 18 (Miss.1998).
*1022 ¶ 29. First, the basis for Expro’s application for a preliminary injunction against H & H was a purchase order which it had attached as Exhibit A to the complaint and which had not been signed by the defendant, nor could Expro adduce proof that H &,H had signed a similar document. The chancellor found:
We tried this case in two days, and the peg that Expro was using to get the restraining order to begin with against H &.H was this Exhibit A. And lo and behold, during the course of the hearing, we find out that Exhibit A never existed. There was no such document in existence as what was represented to the Court when the Court was asked to issue a restraining order.
It was acknowledged at that time that Expro could not produce to the Court that document nor any other document incorporating those terms in a purchase order between H & H and Expro.
The chancellor further found:
[Cjall it bad faith, you 'can call it being untruthful. They Way want to call it an oops. We messed up. But somebody, when Expro signed a document that served as a basis for this Court taking action, that has created all of what we’ré dealing with here .today — and they signed' it. " They either knew it wasn’t true or they didn’t — they didn’t attempt to verify whether it was true or mot. That’s the. way I view it.
The chancellor did not abuse his discretion in finding.that Expro had acted in bad faith by attaching an irrelevant purchase order, which had not been signed by H & H, to its complaint as the basis for' a preliminary injunction.
¶30. Moreover, the chancellor found that, based on the complaint as pled by Expro, it was apparent that Expro was not entitled to the relief it requested, an injunction. See Germain v. Harwell, 108 Miss. 396, 66 So. 396, 398 (1914) (defining a complaint as “frivolous” if it is “so clearly untenable, or the insufficiency of Mich is so manifest upon a bare inspection of the pleadings, that the court or judge is able to determine its character without argument or research.”). In its complaint, Expro asserted that it was. entitled to an injunction because the construction of its six-inch, trailer-mounted flare stack was a “trade secret.” The definition of a trade secret is information that “(i) Derives -independent economic value ... from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.” Miss.Code Ann. § 75-26-3(d) (Rev.2009) (emphasis added). However, in addition to asserting that the construction of the six-inch flare stack was a “trade secret,” Expro asserted that it had proprietary rights to its relevant patents and that Walters and -H & H had violated these rights. Indeed, the chancellor found that, -in Exhibit A attached to Expro’s complaint, “Paragraph 16 talked about proprietary rights. Paragraph 17 talked about patents. Paragraph 20 talked about confidentiality.” Moreover, during the hearing, Expro adduced evidence that it had a patent on the design for its six-inch, trailer-mounted flare stack. Stated differently, as pled and argued by Expro in its complaint, because Expro had obtained a patent on its design for the six-inch, trailer-mounted flare stack, the flare stack’s design was “readily ascertainable by proper means” and therefore, by definition, was not a- trade secret. Miss.Code Ann. § 75-26-3(d). In fact, we have held, “[tjrade secret processes are , not passed upon officially as are patented processes.” Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, *1023 1268 (Miss.1987). Thus, an inspection of the complaint itself reveals' that Expro’s application for a preliminary injunction was frivolous.
¶ 31. In sum, we leave the question of whether the bond injunction rule, is still in effect for another day,.because.it is clear that the chancellor determined that Ex-pro’s injunction claim was frivolous and made in bad faith. Thus, regardless of the amount of the injunction bond, attorneys’ fees were appropriate under Rule 11 and the Litigation Accountability Act.
II. Whether the trial court erred by dismissing H & H with prejudice.
¶ 32. Next, Expro argues that the chancellor erred by - dismissing H & H from this case with prejudice.
¶ 33. ‘ This Court applies the substantial evidence/manifest error standard to an appeal of a grant or denial of a motion to dismiss pursuant to Rule 41(b). Stewart v. Merchants Nat’l Bank, 700 So.2d 255, 258 (Miss.1997) (citing Century 21 Deep South Props., Ltd. v. Corson, 612 So.2d 359, 369 (Miss.1992)). “[I]f the trial court applies the ‘correct, legal standard,’ we must affirm the decision, regardless of what any one of us individually might have ruled had we been the judge, unless there is a ‘definite and firm conviction that the court below committed clear error,’ ” Ashmore v. Miss. Auth. on Educ. Television, 148 So.3d 977, 981 (Miss.2014) (quoting City of Jackson v. Rhaly, 95 So.3d 602, 607 (Miss.2012)).
1134. In this case, after determining that Expro’s suit against H & H was mer-itless, the Chancery Court of the First Judicial District of Jones County sua sponte dismissed the suit against H & H with prejudice pursuant 'to Rule 41(b) of the Mississippi Rules of Civil Procedure. The relevant part of Rule 41(b) provides:
After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court may then render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.
M.R.C.P. 41(b).
¶ 35. Notwithstanding the merits of Ex-pro’s claims against H & H, according to the plain language of Rule 41(b), the trial court’s dismissal with prejudice was erroneous for two reasons. First, the trial court did not dismiss the case after a trial, a clear prerequisite to. dismissal with, prejudice pursuant to Rule 41(b). M.R.C.P. 41(b) (“in an action tried by the court without a jury”). Instead, the trial court dismissed this case after a hearing about whether Expro was entitled to a preliminary injunction. Second, Rule 41(b) states that “the defendant ... may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.” M.R.C.P. 41(b). Under the plain language of the rule, Rule 41(b) relief may be awarded only on the motion of the defendant, regardless of the merits of the case. The defendant in this case, H & H, did not file a Rule 41(b) motion. Instead, H & H moved ore tenus that “the temporary retaining [sic] order be dissolved, and move[d] to dismiss [the] complaint for an injunction because of those misrepresentations that have been made.” At best, this can be interpreted as a request for dismissal of Expro’s application for a preliminary injunction as a sanction and not as a request' for dismissal of the entire case on the merits.
*1024 ¶ 36. Thus, the trial court applied the wrong legal standard in am aponte dismissing Expro’s case, which was clear error. . <
CONCLUSION
¶37.' In sum, we leave for another day the question of whether the bond injunction rule remained in effect after the adoption of the Mississippi Rules of Civil Procedure. We instead affirm the trial court’s award of attorneys’ fees to H & H and Walters because Expro filed its application for a preliminary injunction frivolously and in bad faith, in violation of Rule 11 and the Litigation Accountability Act. However, the trial court applied the wrong legal standard and therefore erred in sua sponte dismissing H & H from Expro’s suit with prejudice. We therefore reverse the Court’s order dismissing the case against H & H with prejudice and remand the case to Chancery Court of the First Judicial District of Jones County for proceedings consistent with this opinion.
¶ 38. AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
WALLER, C.J., DICKINSON, P.J., LAMAR, PIERCE AND COLEMAN," JJ., CONCUR. KING, J., CONCURS Ilf ' PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND CHANDLER, J. ■ .

. Walters signed an agreement that stated that he would not "at any time during my employment or after the termination of my employment use for myself or' others, ei’ divulge to others, any Secret, proprietaty, or confidential information of the Company." It also provided that he would “not engage at any time during my employment in the same or a similar line of business or research as that carried on'in the Company....”

. Rule 45 provides that subpoenas for production of documents "shall allow not less than ten days for the person upon whom it is served to comply with' the subpoena" unless the court shortens the time for "good cause shown." M.R.C.P. 45(d)(2).

. There are two Chris Holifields in this case. Chris L. Holifield is an employee of Expro. Chris M. Holifield is the owner of H & H.

, Expro also had filed a patent infringement suit in Texas against Clean Combustion and its owners over the same or similar issues. Because patents are public information, in which a person receives exclusive rights to a process or invention for a certain period of time in exchange for making the information publicly available, and trade secrets by definition must not be publicly available, the issues are necessarily mutually exclusive. See Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974).

. Section 11-13-37 provides:
Where the party claiming damages shall desire, upon the dissolution of an injunction, to have the same ascertained and decreed by the chancellor or the chancery court, he shall suggest in writing, on the hearing of the motion to dissolve the injunction, the nature and amount of damages; and the chancellor or court shall hear evidence, if necessary, and assess the damages, and decree the same to the party entitled thereto, for which execution may be issued, as in other cases, against the obligors in the bond given for the injunc-tion_
Miss.Code Ann. § 11-13-37 (Rev.2004).

. Mississippi Rule of Civil Procedure 65(c) provides:
No restraining order of preliminary injunction shall issue, except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of shell costs, damagés, and reasonable attor* ney’s fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained; provided, how *1021 ever, no such security shall be required of the State of Mississippi or of an officer or agency thereof, and provided further, in the discretion of the- court, security may not be required in domestic relations actions.
M.R.C.P. 65(c). The Advisory Committee Note to the rule provides that the purpose is "so that proper payment for costs, damages and reasonable attorneys’ fees may be made to the restrained- party ,in the event it is determined that such party was wrongfully enjoined or restrained.” M'.R.C.P. 65, Advisory Committee Note.

. Of note, Rule 11 was promulgated and the LAA was enacted after this Court decided Broome. ‘